PRICE *against* LYON and others.

In 1761, the ecclesiastical society of *G,* passed a vote, prohibiting the sale or conveyance of pews in their meeting-house to any person not a member thereof, or belonging to another denomination of *Christians.*    In *January,* 1811, *J,* the owner of one undivided fourth part of a pew, sold his interest therein, to *B,* who was not then a member of the society, and gave him a bill of sale thereof, not under seal, or acknowledged ; and in *August,* 1814, *B,* by an indorsement on such bill of sale, assigned his interest to *L.*    In *October,* 1811, *H,* who claimed an undivided sixth part, by descent from her father, gave to

*Fairfield,*
June, 1841.

Price
*v.*
Lyon.

*L*, a like bill of sale of her interest; *H*, belonging, at the death of her father and ever afterwards, to another denomination of *Christians*. *L* entered under these instruments, and held possession, claiming adversely to his grantor, for a period of more than fifteen years; but *R*, during this period, was also in possession, claiming an undivided part under *J*. In an action brought by *R* against *L*, it was held, 1. that the instruments given to *L* were ineffectual to convey a title, because they all wanted the solemnities required by law in deeds of real estate, and as to that given by *B*, for the additional reason, that he, not being a member of the society, had no title to convey; 2. that *H* was not precluded, by the vote of 1761, from taking a title by descent, as that vote did not, in its terms or effect, prevent a transmission from the ancestor to the heir; 3. that although it is generally true, as between tenants in common, that the possession of one, being the possession of all, is not a disseisin of his cotenants; yet where a stranger enters on the common property, claiming title adversely to one of the tenants, and actually excludes him from the possession, this is a disseisin, and consequently, *L*, in this case, acquired a title by possession; 4. that as *L* derived no title from *J* and *H*, though he entered claiming title under conveyances from them, but acquired his title solely by a disseisin of more than fifteen years, which would be sufficient, if made in defiance of all the conditions and qualifications of the estate, and was in of a new title, not affected by the vote of 1761, it was an immaterial enquiry, whether *L*, during a part of the fifteen years, was, or was not, a member of the society.

Where a clerk of an ecclesiastical society gave a writing, purporting to be a copy of a certificate of membership previously lodged with him, and certified such writing as a copy, by signing his name, with the addition of "clerk" only; it was held, 1. that the original was a document of which the clerk of an ecclesiastical society could give an official copy; and 2. that the attestation was sufficiently formal.

THIS was an action of trespass *vi et armis.* The defendants pleaded severally, first, the general issue, with notice of special matter to be given in evidence, and then two special pleas, which it is not necessary here to state.

The cause was tried at *Fairfield*, *February* term, 1841, before *Sherman*, J.

On the trial, it was proved by the plaintiff, and admitted by the defendants, that the plaintiff was entitled to an undivided right in a certain pew in the congregational meeting-house in the society of *Greenfield*, in the town of *Fairfield ;* and that the time when the trespass or assault mentioned in the declaration, was committed, was in the afternoon of *Sunday,* the 27th of *October*, 1839, when the congregation were convening for worship, and before the clergyman who officiated on that day, had arrived, or any religious exercises were begun : that *Eliphalet Lyon,* one of the defendants, was not, at that time, in the pew, but that his wife and the two other defendants, who were his daughters, were in it, where they had taken

*Fairfield,*
June, 1841.

Price
*v.*
Lyon.

their seats for the meeting in the afternoon : that the plaintiff was outside of the door of the pew, with a chain and padlock in his hand, and told Mrs. *Lyon* and her daughters to leave the pew, and if they did not, he should lock them in : that they kept their seats, and refused to go out ; and the plaintiff thereupon, in order to close the pew, attempted to put the chain through the rounds or balusters near the top of the door, and also through other rounds or balusters adjacent thereto, and lock the same with the padlock, by which the door would have become fast and impassable ; and while in that condition, Mrs. *Lyon* and her daughters could not have left it, but by getting over the top, into one of the pews adjoining, or into the adjoining aisle. And while the plaintiff was so attempting to lock the door with the chain and padlock, they endeavoured to prevent it, and seized and pulled the chain, the plaintiff still persevering in such endeavour : and at that time, *Lyon* came to the pew, and assisted in resisting the plaintiff, ordering him to desist, and forcibly pushed him aside, and in the struggle, the chain was drawn, by the defendants, or some of them, through the hand of the plaintiff, which was thereby wounded and injured.

It was insisted, on the part of the defendants, that *Lyon* was the owner of a proportion of the pew ; that he and his family had, for many years, occupied it jointly with the plaintiff ; that his wife and his daughters, the other defendants, were then lawfully there, by his permission, and in his right ; that by the fastening of the door, his wife and daughters would have been wrongfully imprisoned in the pew ; and that the force employed, and means used, on the part of the defendants, were no more than were necessary to prevent such wrong and injury.

In order to prove that *Lyon* had a title to the pew, the defendants gave in evidence the following vote of said society, passed in 1761 : " *Greenfield,* 10th *November,* 1761. At a parish meeting, legally warned, &c.

" *Voted,* that those who purchase the spots or places for the purpose aforesaid, be obliged to build their pews by the time limited.

" *Voted,* that the spots or places, and the pews so built, shall not, by them who purchase as aforesaid, or by their heirs or assigns, be ever sold or conveyed to any person that

*Fairfield,*
*June, 1841.*

Price
*v.*
Lyon.

doth not, at the time of conveyance, belong to the society or to any one of another persuation or denomination."

The defendants then introduced evidence, shewing that *John Jennings*, a member of said society, purchased the spot or place in the meeting-house whereon said pew is, in pursuance, and under the terms, of said vote, and erected said pew thereon ; that *John Jennings* died in 1799, and left said pew intestate property ; that he left six children, who were his only heirs at law ; three of whom were *Mary Heron*, the wife of *William Heron*, Esq., then of *Reading*, in the county of *Fairfield, Joel Jennings* and *Josiah Jennings*, of the society of *Greenfield.* The defendants admitted, that the wife of the plaintiff, who was the daughter of *Joel Jennings*, was entitled to one eighteenth part of said pew, as one of the devisees of *Josiah Jennings*, who was long since dead; but claimed, that *Lyon* was entitled to the one sixth part of it, which was owned by *Joel*, as heir of *John*, and of another one sixth part thereof, which was owned by *Mary Heron*, as heir of *John*.

To prove these titles, the defendants offered in evidence the following writings. The first was a bill of sale from *Joel Jennings* to *Walter Bradley*, purporting to convey to him, for the consideration of 5 dollars, " one fourth part of the second pew on the *East* side of the meeting-house in the parish of *Greenfield*, which was built and owned by *John Jennings*, late of *Fairfield*, deceased ;" dated *January* 11th, 1811. Another was an assignment, by *Walter Bradley* to *Eliphalet Lyon*, for value received, of all the assignor's right to said pew, endorsed on the preceding writing ; dated, *August* 4th, 1814. The other was a bill of sale from *William Heron*, and *Mary*, his wife, to *Eliphalet Lyon*, for the consideration of 7 dollars, of " all their right, title and interest in a certain pew in the meeting-house of the parish of *Greenfield*, being the same which formerly belonged to *John Jennings*, late of *Fairfield*, deceased ;" dated, *October* 3rd, 1811. Neither of these writings was under seal, or acknowledged before a magistrate.

The plaintiff thereupon objected to these instruments, as evidence to prove any title in *Lyon*, as they had not the necessary forms and solemnities of deeds to convey real estate, as required by the laws of this state. He also gave evidence to prove, and the fact was not denied, that, at the time of the pretended conveyance to *Bradley*, and at the time of his

*Fairfield,*
June, 1841.

Price
*v.*
Lyon.

making said indorsement thereon, he had ceased to be a member of said society, and had, in legal form, united himself to another denomination of *Christians—viz.* the *Baptist;* and was, therefore, incapable of receiving and conveying any title in said pew.

The plaintiff also offered evidence to prove, that at the death of *John Jennings, Mary Heron,* his daughter, was not a member of said society, and had never since been, but was a member of the *Episcopal* society in *Reading,* and so continued ever after; and therefore contended, that she was incapable of inheriting said pew from *John Jennings,* her father, and could never own it: so that *Lyon* did not derive any title, by said instrument of *William* and *Mary Heron.*

The defendants offered testimony to prove, and insisted that they had proved, that *Lyon* had been in possession of said pew ever since the date of the instruments executed to him; and during all that time, had claimed adversely to *Joel Jennings* and *Mary Heron;* and that, during all that time, said *Joel* and *Mary Heron,* respectively, had been by him disseised and excluded from the possession of said pew; and that said *Mary* became a widow fifteen years or more before the alleged trespass, and ever after continued single and unmarried.

The plaintiff offered evidence to prove, and it was admitted, that on the 20th of *November,* 1820, *Lyon,* by a certificate given and lodged with the clerk of said society, in due form, ceased to be a member thereof; and the plaintiff insisted, that he thereby became incapable of acquiring or owning any title in said pew, by adverse possession. The defendants contended, that after giving said certificate—*viz.* in *April,* 1824, he gave to the clerk of said society, jointly with a number of other persons who had previously left it, a certificate, whereby he became re-united thereto; and that he had continued a member thereof ever since. And to prove that he so became re-united to said society, he offered in evidence a certain writing, purporting to be a copy of such certificate, certified by *Gershom Wakeman,* as clerk of said society, to be a true copy of record. It was admitted, that he was clerk of said society, about 27 years—*viz.* from *November* 14th, 1805, until *November* 22d, 1832. The plaintiff offered him as a witness, who testified, that the original, of which said writing purported

to be a copy, never came into his hands, as clerk of said society. His certificate thereto was not denied to be in his handwriting. The original of said copy was not produced; nor was there any evidence whether it was lost or not. And the plaintiff objected to the admission of said copy in evidence; but the court admitted it to go to the jury, as evidence for their consideration.

The plaintiff claimed, that by force of said vote of said society, in 1761, *Mary Heron,* if of another society, and not of the congregational persuasion, at her father's decease, and ever afterwards to this time, could not take, as heir of *John Jennings,* at his death; nor, as such heir, acquire a title afterwards: and that, as the defendant, before the lapse of fifteen years from the date of either of said conveyances by him claimed, *viz.* on said 20th of *November,* 1820, ceased, for a time, to be a member of said society, his adverse possession, if he had any, was interrupted thereby, as to its legal effect, and the time thereof, which had then elapsed, could not be computed as part of the fifteen years necessary to acquire a title: and that, while the wife of the plaintiff, or he, in her right, occupied said pew, the defendant could, by his possession thereof, gain no title whatever; as such possession of the plaintiff and his wife was, in legal effect, the possession of all other co-owners of said pew with the plaintiff's wife; and requested the court so to charge the jury.

The court charged the jury, that the instruments executed by said *Joel Jennings* to *Bradley* and by *Bradley* to *Lyon,* and also the instrument executed by *William* and *Mary Heron* to him, were void and of no effect in law to convey any title in said pew, for the reasons assigned by the plaintiff. And that *Bradley,* at the time of the execution of said instrument by *Joel Jennings* to him, not being a member of said society, but of another denomination of *Christians,* was incapable, by virtue of the vote of 1761, of taking a title in said pew: but that they need not inquire, whether *Mary Heron* was, or was not, a member of said society, or of any other, at the decease of her father, *John Jennings,* or afterwards, as she was capable of inheriting a right in said pew from her father, whether she was a member of said society or not. That *Lyon* could not, while not a member of said society, become vested with a title in said pew, by adverse possession; but if,

*Fairfield*,
June, 1841.

Price
*v.*
Lyon.

at the expiration of fifteen years adverse possession, he was a member of said society, as the title by such possession could not pass till the expiration of that time, it might then vest in him, notwithstanding a part of such possession was during the period, when he was not a member of said society. During that interval, he could, as a disseisor, hold the owner out. It is for the jury to weigh the evidence of the clerk's certificate, of his oath, and any other evidence which is before them, to ascertain whether the instrument offered to prove the reunion of *Lyon* with the society, was duly lodged with the clerk of said society, and at what time. For this, its date may be taken into consideration. If the jury shall find, that *Lyon*, for the term of fifteen years, had possession of the pew in question, claiming under the title of *Joel Jennings*, and that, during that time, he disseised and held out said *Joel Jennings*, and all persons, if any, claiming under him; and that, at the expiration of such fifteen years, he was a lawful member of said society, they must find that he thereby became entitled to the right of *Joel Jennings* in said pew. And if they shall find, that he held possession of the pew in question, for the full term of fifteen years, claiming under the title of *Mary Heron ;* and that, during that time, he disseised, and held out said *Mary*, and all persons, if any, claiming under her; and that full five of said fifteen years elapsed, while she was a widow, and unmarried; and that at the expiration of such fifteen years, *Lyon* was a lawful member of said society; they must find, that he thereby became entitled to the right of said *Mary* in said pew. In ascertaining under whose right, and against whom *Lyon* had possession of said pew, the instruments executed by *Joel Jennings, Walter Bradley* and *Mary Heron*, may be taken into consideration.

If the jury shall find, upon these principles, that *Lyon* had acquired a title in this pew, as a tenant in common with the plaintiff, they must also find, as matter of law, that the defendants had a right to use necessary and reasonable force, to prevent the plaintiff from locking up the same, so as to confine the wife and daughters of *Lyon* therein; and if no more than such reasonable force was used by them, or any of them, they must give a verdict in their favour upon the issues joined. But if they shall find, that *Lyon* had not, upon these principles, acquired any right in said pew, or if the defendants, or

any of them, used other or greater force than was necessary to prevent the plaintiff from locking said pew, whereby the plaintiff was assaulted or injured, they must find a verdict for him to recover of the defendants, or such of them as shall be found guilty, upon these principles, just damages, and his costs. The court also informed the jury, that when the verdict should be returned, if it should be for the defendants, the court would inquire of them, whether they found that *Lyon* had acquired the title of *Mary Heron*, by adverse possession, and also, whether they found that he had acquired the title of *Joel Jennings*, by adverse possession; to which they must be pre-pared to reply.

The jury found a verdict for all the defendants; and being then inquired of, by the court, declared, at the time of giving their verdict, that they found that *Lyon* had acquired the title of *Joel Jennings*, and also the title of *Mary Heron*, by ad-verse possession.

The plaintiff excepted to the interlocutory decisions of the court in admitting evidence offered by the defendants, and also to the charge of the court, as erroneous in law, and there-upon moved for a new trial. The questions of law thereon arising, were reserved for the consideration and advice of this court.

*Hawley* and *Dutton*, in support of the motion, contended, 1. That the copy was improperly admitted. In the first place, there was no evidence that the original had ever been left with the clerk, or any other officer. *Wakeman's* testimony was explicit, that it never had; and there was nothing in his *attestation*, which tended to show that it had. Secondly, the only legal evidence would have been the *original*, with proof of *Lyon's* signature, or a sworn copy, with proof of the *loss* of the original, and of *Lyon's* signature. Thirdly, the certifi-cate being the act of the applicant only, the clerk must send the votes and proceedings of the society. Fourthly, the attes-tation is insufficient, as it does not appear of what society or corporation the certifier was clerk. *Jackson* d. *Walton* & al. v. *Leggett*, 7 *Wend.* 377.

2. That *Lyon's* incapacity to take and hold, during a part of the fifteen years, prevented his acquisition of title, by his possession. One incapable of acquiring a title himself, can-

not, by his possession, deprive the owner of his title. *Jackson* d. *Baldwin* v. *Leonard,* 9 *Cowen* 653.

3. That Mrs. *Heron* being, at her father's death, of another denomination and society, could not inherit a right in the pew. Transmission by descent, is as much within the reason and object of the vote of the society, as conveyance by grant. This vote may be construed with at least as much liberality as a statute. *Co. Litt.* 24. *b.* 77. *b.* 280. *b.* 365. *b. Bac. Abr.* tit. Statute. I. 6. 2 *Selw. N. P.* 807, 8. 1112. *The People* v. *Utica Insurance Co.* 15 *Johns. Rep.* 358.

4. That *Lyon* could acquire no title by possession, while the plaintiff continued in possession; for the possession of one tenant in common, being that of all, saves the rights of all. No one tenant in common, can be ousted by a stranger, unless all are ousted. If the plaintiff's possession, as between himself and the others, was the possession of all, it must have been so as to strangers.

*Bissell* and *Booth,* contra, contended, 1. That the certificate of the clerk was correctly proved by copy. *Stat.* tit. Societies. *s.* 2. 4. 1 *Phill. Ev.* 424. *Jackson* d. *Bogert* & al. v. *King,* 5 *Cowen* 237.

2. That the conveyances of *Joel Jennings, Walter Bradley* and *Mary Heron* were admissible, to show the extent and character of *Lyon's* possession. *Rogers* v. *Hillhouse,* 3 *Conn. Rep.* 398. *Jackson* d. *Roosevelt* v. *Wheat,* 18 *Johns. Rep.* 40, 44. *Id.* 361. 8 *Cowen* 603.

3. That *Mary Heron,* though she could not purchase, might take by descent, notwithstanding the vote of 1761.

4. That upon the question of adverse possession, the time during which *Lyon* was not a member of the society, if there was any such time, ought not to be excluded. 1 *Bla. Com.* 167. 18 *Johns. Rep.* 44. *Fanning* v. *Wilcox,* 3 *Day* 258. 1 *Sw. Dig.* 162.

5. That notwithstanding the possession of the plaintiff, as cotenant of *Joel Jennings* and *Mary Heron, Lyon* could disseise them, and acquire their title. *Bryan* v. *Hinman,* 5 *Day* 218, 19. 1 *Sw. Dig.* 104. *Doolittle* v. *Blakesley,* 4 *Day* 273.

SHERMAN, J. The defence in this case, was grounded on the title of *Eliphalet Lyon,* one of the defendants, to a pro-

*Fairfield,*
*June, 1841.*

Price
*v.*
Lyon.

portion of the pew.   He claimed to have become vested with the titles of two of the heirs of *John Jennings*, under whom both parties claimed, and whose title was admitted.   *Joel Jennings,* a son and heir of *John*, attempted to convey his title to *Walter Bradley*, by the writing bearing date *January* 11th, 1811 ; and in 1814, *Bradley* indorsed upon it, an assignment to *Lyon*.   It was  correctly stated in the charge  to the jury, that these  instruments  were ineffectual ;  first,  because they lacked  the solemnities  required by law  for the  transfer of real estate by deed ;  and secondly, as  *Bradley*, at that time, was not a member of the society, *Joel Jennings* could not convey the pew  to him, by reason of  the condition  annexed  to the title, by the vote of  1761—under which the  purchase of the pew was  made of the society—prohibiting a conveyance to any person not a member, or belonging to another denomination of  *Christians*.

The objection  taken by  the plaintiff  to the title of  *Mary Heron*, who was a daughter, and the  other heir of  *John Jennings*, under whom *Lyon* claimed another undivided right in the pew, was  properly overruled by the court.   It was immaterial whether she  was a member of the  society, or not, at the death of  her father, or afterwards.   The vote of  1761 is to be construed not as  a law, but  as  a contract.   It is  not competent to the court to add to its provisions, in order to effect its supposed object.   It provided, " that the spots or places,  and the pews so built,  shall not,  by them who purchase as aforesaid, or by their heirs or assigns, be ever sold or conveyed to any person, that doth not, at the time of conveyance, belong to the society, or to any one of  another persuation or denomination."   If a purchaser, taking the estate with  such a condition  annexed, would  be thereby disabled from making a conveyance in violation of it ;  yet it would  not, in its terms or effect,  prevent a transmission from the  ancestor to the heir.   Such a transmission  is in no  sense a sale or conveyance, and is,  therefore, not within its terms.   But were it ever so clearly embraced, it could not prevent an inheritance by the heir ;  for that  must be regulated by the canons of descent.   It would be as ineffectual as a provision that an  estate should,  in all future time, descend  to the  oldest or youngest son, or that any particular  class of persons should be forever incapable of inheriting.   But  the  instrument  executed  by

*William* and *Mary Heron* to *Lyon*, on the 3rd of *October*, 1811, not having the legal requisites, conveyed no title.

*Fairfield,*
June, 1841.
——
Price
*v.*
Lyon.

*Lyon*, however, claimed to have entered under these instruments, and to have continued his possession to the time of the trespass; which, from the date of the latter instrument, was a period of about twenty-eight years, and twenty-five from the assignment of *Bradley*; and during these periods respectively, to have held adversely to *Joel Jennings* and Mrs. *Heron*.

If a title was acquired by *Lyon*, it must be by virtue of the desseisin. To this the plaintiff objects, on the ground that the possession of one tenant in common is the possession of both; and therefore, as the other heirs of *John Jennings*, and those claiming under them—of whom the plaintiff, in right of his wife, was one,—occupied during the time when *Lyon* claims to have been in possession, that possession could not be a disseisin of *Joel Jennings* and Mrs. *Heron*; as they were *in*, by the plaintiff and the other tenants in common.

It is generally true, that as between tenants in common, the possession of one is the possession of all. As each may rightfully possess the whole, liable to account, such possession is not a disseisin of his cotenants. But when a stranger enters on the common property, claiming title adversely to one of the tenants, and actually excludes him from the possession, and takes the profits, this is a disseisin. He takes the place of the excluded proprietor, by becoming, in *fact*, the cotenant of those with whom he holds, and their possession is no longer that of the disseisee. The disseisor usurps his relation, as well as his place. By such a disseisin a tenant in common may be divested of his interest, as well as a tenant in severalty.

But the plaintiff contended, that as *Lyon*, in 1820, ceased, by his certificate, to be a member of the society, his possession was unavailing, as he had not the qualifications to acquire a title, made necessary by the vote of 1761. To meet this objection, the defendants offered the copy of a paper, certified by " *G. Wakeman*, clerk," dated in 1824, by which he reunited himself to the society, in the form prescribed by statute. To this copy the plaintiff objected, on the ground, that the original was not a document of which the clerk of a society could give an official copy, and that the attestation was not in proper form, as he certified as *clerk* only, without stating in

what society or body he held that office.    But we consider a certificate of membership, lodged with the clerk of an ecclesiastical society, as a public document of the corporation, which ought not to be removed, but remain perpetually on file.    It is from such documents that the members are designated ; and by them only can the right of suffrage and the liability to taxation be shewn.    Such a certificate of membership, " unless a majority shall, at their next meeting, manifest their dissent," becomes, by statute, conclusive evidence of their assent, and as such, supplies the place of a recorded vote.    The act for the regulation of civil actions, *sect.* 51. provides, that " when the clerk of any court, town, *society* or corporation is absent," &c., " the *files*, records, votes and proceedings of such court, town, society or corporation, may be proved, in any court of law, by copies examined and sworn to, by credible witnesses ;" clearly implying, that such *files*, &c., might be exemplified by the clerk, if not absent or disabled ; and that the powers of clerks of societies, in this respect, are coextensive with those of courts, or of any corporations.    The signature is sufficiently formal, and according to the common usage in this state.

But this proof of membership was all unnecessary.    The opinion expressed, by the judge, in his charge to the jury, that although the possession of *Lyon*, during the time he was not a member of the society, might be computed, yet he could not become vested with a title in the pew, by adverse possession, unless he was a member at the expiration of the fifteen years, was more favourable to the plaintiff than the law would warrant.    *Lyon* was a disseisor, and never assented to the vote of 1761.    He claims under no deed of which that forms a condition.    He might acquire a title by adverse possession, against the society itself.    The title of a disseisor does not imbibe the provisions and limitations in that of the disseisee.    " A disseisin of an estate for life," says *Hobart*, " by necessity in law, makes a *quasi* fee ; because wrong is unlimited and ravens all that can be gotten, and is not governed by the terms of the estates, because it is not contained within rules." *Hob. Rep.* 323.    Although *Lyon* entered claiming title under the conveyances from *Joel Jennings* and *Mary Heron ;* yet this is evidence of nothing more than that he held adversely to them.    He derived no title from those conveyances.    The

*Fairfield,*
June, 1841.

Price
*v.*
Lyon.

law, to ascertain his rights, looks only on an unwarranted and forcible disseisin for the period of fifteen years, made in defiance of all the conditions and qualifications annexed to the estate of the disseisees. The title of the disseisee is not *acquired by possession*, but *lost by disseisin.* There is no presumption of a grant. The fifteen years adverse possession, simply, annihilates the title of those, who, during the time, had a right of entry, and neglected to avail themselves of it. The language of our statute is, " that *no person shall*, at any time hereafter, *make entry* into any lands or tenements, but within fifteen years next after his right or title shall first descend or accrue to the same," &c. It transfers no title, and confers none on the person by whom the owner has been ousted. A naked possession is a perfect title, if a superior one cannot be shewn in another ; and such is that of the person who happens to be in possession at the end of the fifteen years. This was decided, by this court, in *Fanning* v. *Palmer, June,* 1808. " Actual ouster and adverse possession," say the court, " of any lands, tenements or hereditaments, for fifteen years after the title or cause of action accrued, and before suit brought, bars the plaintiff of his right of entry thereafter, *whether the ouster and adverse possession be by the same person or persons, for the whole term of fifteen years, or by different persons, for different periods,* making fifteen years in the whole ; provided, the disseisin and adverse possession have been continued and uninterrupted." 3 *Day,* 258. In that case, the fifteen years disseisin was made up, partly by the possession of *Joseph Noyes*, who gained no title, and partly, by that of *Nathaniel Palmer*, who succeeded him without title, and between whom and *Noyes* there was no connexion or privity. But *Palmer, being in* at the close of the fifteen years, was held to have a good title.

Upon this principle, so clearly deducible from the statute, and sustained by the highest authority, the titles of *Joel Jennings* and Mrs. *Heron*, who was then a widow, were *extinguished* by disseisin. The title of *Lyon*, was not acquired from them by possession, but rests simply upon his actual seisin at the expiration of the limited period. He was *in* of a

*Fairfield,*
June 1841.

Price
*v.*
Lyon.

new title, not held under the vote of 1761 ; and it was therefore immaterial whether he was a member of the society or not.

We are of opinion that a new trial ought not to be granted.

In this opinion the other Judges concurred.

New trial not to be granted.