## LOT NEWELL vs. MARY L. WOODRUFF.

An ouster by a tenant in common of his co-tenant does not differ in its nature from any other ouster, and in no respect except in the degree of evidence required. In other cases the assumption of ownership is more clearly adverse to all the world. In the case of a tenant in common such assumption and the acts which indicate it, may be consistent with the acknowledgment of the rights of the co-tenant. Acts therefore which are decisive in the one case are equivocal in the other. An actual intent to exclude the co-tenant from the enjoyment of the property must be shown, and no evidence on this point is so satisfactory as a refusal to admit him to possession, or to account for profits received, on a demand made.

And where a person is occupying premises as his own, in the belief that he has an exclusive title, and in ignorance of the rights of another person as tenant in common, it is unreasonable that he should be subjected to the cost and damage demanded in an action of disseizin, until the demandant has apprised him with reasonable precision of the nature of his claim, and given him a reasonable opportunity to determine as to his duty and the course which he will pursue.

In an action of disseizin in which the plaintiff claimed to be a tenant in common with the defendant of a certain dwelling house and land connected therewith, it appeared from the plaintiff's evidence that the defendant had occupied the premises for several years, having received them as a part of her father's estate, and that she supposed that she had a perfect and exclusive title to them, and had not known, until she received certain letters from the plaintiff, that any other person claimed an interest in them; that she had rented a part of the house for five years before the suit was brought, taking the rent as her own; that the property during all the time had been placed by the assessors in her tax list as her property and that she had paid the taxes upon it; and that she had received and had not answered three letters written her by the plaintiff shortly before the suit was brought, in which he stated that a part of the house and some of the land belonged to the estate of A L of whom he was executor, and desired to know what she would give him to relinquish the claim, and in the last of which he stated that the heirs wanted only their just rights, and that if he did not hear from her he should conclude that he had done all in his power to arrange the matter amicably, and that it would only remain to him to do his duty as executor, but that he hoped to receive from her a satisfactory proposition. The plaintiff having been non-suited in the court below on the ground that he had not produced sufficient proof of an ouster to go to the jury, this court refused to set the nonsuit aside.

EJECTMENT, to recover the possession of a dwelling-house and two pieces of land situated in the town of Bristol, of which the plaintiff claimed to be tenant in common with the defendant; tried to the jury in the superior court, on the general issue, before *Seymour, J.*

On the trial, after the plaintiff had closed his evidence, the counsel for the defendant moved for a nonsuit, on the ground that there was not sufficient evidence of an ouster to go to the jury. The court sustained the motion and nonsuited the plaintiff, who thereupon moved to set aside the nonsuit, which motion was reserved for the advice of this court. The evidence as stated by the judge, so far as it related to the question of ouster, was substantially as follows :—

*Henry Beckwith* testified :—" I live in Bristol, and occupied the house in question five years, from the spring of 1855 to the spring of 1860. I hired the south part of the house of the defendant. She said we might use some of the rooms on the north side unless she rented them. She occupied a part of the house herself. I paid rent to her all the time we were there. I did not know any other person who occupied the premises."

*Mrs. Henry Beckwith* testified :—" We were in the house five years. I supposed from what she said to me that the house was her property. She spoke of it as if it was hers."

*William Carter* testified that he was an assessor of the town of Bristol during the year preceding the institution of the suit, and that the property in question was included in the property described in the defendant's list, on which she paid taxes as her own. The list was also laid in.

The defendant, being called by the plaintiff, testified :—" I have occupied the property as my own. It was given to me by my father, Miles Lewis. The property was included in my assessment list, and I have always paid all the taxes on it as they came due. I made out no list myself. I paid the tax as made out by the assessors." On cross-examination she said :—" I had no occasion to make any particular claim to the property since my father's death. No one has set up any title or claimed any right to it, to my knowledge."

The plaintiff also introduced the following letters, written by himself to the defendant, all of which it was admitted by the defendant were received by her. The first was addressed to her at Bristol, the others at Covington, Kentucky. They were never answered by her.

" Washington, Nov. 19, 1858.

" Miss Mary. L. Woodruff.—

" I know not when I shall again be at your place, but I am very desirous to have an interview with you, if you will favor me with it, and meet me at the residence of T. Merrell, in the house at the head of Crown street, or any other place in New Haven which you will please to name. I will pay your railroad fare both ways between Bristol and New Haven, and will meet you there any day you will designate after I return to New York. I know not how long I shall remain in this city, and shall make a short stop in Baltimore, and also stop a short time in Philadelphia, on my return to New York. Please favor me with a reply at your earliest convenience, and address me at French's hotel, New York, that I may find it there on my arrival. Yours, very respectfully,

L. NEWELL."

" New York, 1st Dec. 1858.

" Miss Mary L. Woodruff.—

" Some days since I wrote you from the city of Washington, requesting you to favor me with an interview. I have returned to this city, and learn that you have gone west, perhaps to Covington, but am not certain. I regret I could not have seen you, as there is much I wished to say which can not be written. The present communication is as unpleasant to myself as it will be to you, but I am called upon as executor to act. If I could have seen you, I think the business would have been arranged to our mutual satisfaction, and I hope it may yet be so, but something must be done during the present month of December. I believe there is no doubt that a part of the house and some of the land which you occupy belong to the estate of Mr. Abel Lewis, but perhaps you know the circumstances as well as myself. It is therefore unnecessary for me to make any remarks upon them at this time, but if I had seen you we might have compared notes, and had there been any difference in our views it might have been explained to our mutual satisfaction. As it is, please take the subject into your serious and deliberate consideration as to what is best to be done under the circumstances, and

inform me what you will give me to relinquish my claim. Please inform me at your earliest possible convenience, so that if any further correspondence shall be necessary it may take place at the earliest practicable time during the present month, and whatever you may do or say shall not be communicated to any other person to your injury. Please address me at French's hotel, New York, and accept the assurance of my great respect and esteem. L. NEWELL."

"New York, 10th December, 1858.

"Miss Mary L. Woodruff.—

"On my return here from Washington City, whence I wrote you at Bristol, I learned that you had gone west, and immediately on the 1st inst. I addressed a letter to you at Covington. I fear it has not reached you, as I am very sure, from your accustomed politeness, that you would at least have acknowledged its receipt, if you said nothing more. I therefore take the liberty to advise you that if you will send to the post office you will get the letter, and if I do not hear from you by due course of mail, I shall conclude that I have done all in my power to arrange this unpleasant business amicably, and to the mutual satisfaction of us both, and regret that it only remains for me to do what my duty as executor compels me to do. Although possibly it may be arranged satisfactorily when I again have the pleasure of meeting you, yet it may be vastly more difficult to accomplish it, and not so much to the satisfaction of either of us. You will notice that the heirs at law only ask for their legal and just rights, which have been so long unjustly withheld from them, and which perhaps it is your duty peaceably to surrender, and which will not really be any personal injury to yourself, as you will only deliver what equitably belongs to the heirs. Besides, if the heirs do not claim their rights, they will perhaps descend to a stranger, for whom the heirs are under no obligation to entertain any particular sympathy. Hoping to receive from you a satisfactory proposition, I will at this time only add my best wishes for your health and happiness, and you will please accept the assurances of my great respect and esteem.

L. NEWELL."

The counsel for the plaintiff then introduced the deposition of the plaintiff, the principal part of which related to the question of the title to the demanded premises, but of which the cross interrogatories and answers to the same, so far as they pertained to the ouster, were as follows:—

*Q.* " Have you made any demand for these premises other than by those letters? *A.* I have not, personally. *Q.* Why have you not asked for the possession of these premises since 1820? *A.* The administrators of the estate of Abel Lewis acted in that capacity for a great number of years, and I did not know what they might do with this property. *Q.* Has the defendant refused to surrender the premises to you? *A.* I have not met the defendant since demand was made on her. *Q.* Has the defendant refused to surrender the possession of the premises to you? *A.* She has impliedly refused. *Q.* In what way has she impliedly refused? *A.* She did not answer my letters. *Q.* Are those all the letters you have written on this subject to her?' *A.* Yes. *Q.* Did not Miles Lewis live in the house during the settlement of the estate of Abel Lewis? *A.* He did. *Q.* Do you know whether he paid any rent to the administrators? *A.* I do not. *Q.* Did he continue to occupy and use it as his own until the time of his death? *A.* He did continue to occupy it, whether as his own or as administrator I do not know, and until his death. *Q.* From his death until the bringing this suit did not the defendant use and occupy it as her own? *A.* I believe she did."

It was admitted by the plaintiff's counsel that no demand for the possession had been made upon the defendant, except so far as the letters constituted such demand.

*T. C. Perkins* and *C. E. Perkins,* in support of the motion to set aside the nonsuit, cited 2 Greenl. Ev., § 318; Taylor on Land. &. Tenant, § 114; *Oates* v. *Bryden,* 3 Burr., 1895; *Fishar* v. *Prosser,* Cowp., 217; *Dupleix* v. *Roe,* 1 Anst., 86; *Clark* v. *Vaughan,* 3 Conn., 191; *Giddings* v. *Canfield,* 4 id., 482; *Allyn* v. *Mather,* 9 id., 114; *Jackson* v. *Whitbeck,* 6 Cowen, 632; *Carpenter* v. *Thayer,* 15 Verm., 552; *Brock* v. *Eastman,* 28 id., 658; *Gill* v. *Fountleroy's Heirs,* 8 B.

Monr., 177, 186 ; *Wilson* v. *Collishaw*, 13 Penn. S. R., 276 ; *Keyser* v. *Evans*, 30 id., 507, 509 ; *Law* v. *Patterson*, 1 Watts & Serg., 184 ; *Corbin* v. *Cannon*, 31 Miss., 570. *Abercrombie* v. *Baldwin*, 15 Ala., 363 ; *Bostwick* v. *Beach*, 18 id., 50 ; *Manchester* v. *Doddridge*, 3 Ind., 360 ; *Hubbard* v. *Wood's Lessee*, 1 Sneed, 279 ; *Small* v. *Clifford*, 38 Maine, 213 ; *Hargrove* v. *Powell*, 2 Dev. & Batt. Law R., 97.

*McFarland*, with whom was *Newell*, contra, cited *Knox* v. *Silloway*, 10 Maine, 201 ; *Sharp* v. *Ingraham*, 4 Hill, 116 ; *Prescott* v. *Nevers*, 4 Mason, 326, 330 ; *Ricard* v. *Williams*, 7 Wheat., 120 ; *Lodge* v. *Patterson*, 3 Watts, 74 ; *Clark* v. *Vaughan*, 3 Conn., 191; *Giddings* v. *Canfield*, 4 id., 482 ; *Topham* v. *Braddick*, 1 Taunt., 572.

BUTLER, J.   An ouster is a wrongful dispossession or exclusion of a party from real property, who is entitled to the possession.   Like all other wrongful acts, it involves a question of intent.   It may be committed by one tenant in common against his or her co-tenant, and may be proved by any acts which show an actual intent to exclude the co-tenant permanently from his rights.   Hence, although such acts as are consistent with an honest intent to account to his co-tenant for his share of the rents and profits, as the collection of all the rents, payment of all the taxes, occupation and enjoyment of the entire premises and the like, are termed " equivocal," because one may possess for all and be willing or compelled to account to all, other acts necessarily evince an intent to exclude and hold adversely to his co-tenants, such as refusing to account on the ground that the co-tenant has no right in the property, making explicit claim to the whole and occupying under an avowed or notorious claim of right to the whole, and denying the right of the co-tenant to possession, and refusing to acknowledge his right or to let him into possession upon demand made.   But none of these constitute the ouster ; they are but evidence, more or less persuasive, of the adverse intent of the possession.   It is sometimes said that as between tenants in common an *actual ouster* must be proved in all

cases. But the difference is only in the kind of evidence by which it may be proved in the two cases. As against a co-tenant it can not be proved merely by acts which are consistent with an honest intent to acknowledge and conform to the rights of the co-tenant, although such acts might be sufficient evidence of an ouster between the parties if there was no tenancy in common and each claimed the whole. Hence it has been deemed eminently proper and safe, before bringing an action of ejectment against a tenant in common, to test the intent with which the property is holden by a formal demand to be let into the enjoyment of the right claimed; and a refusal furnishes that clear evidence of ouster which a demand and refusal furnish of a conversion in trover. No such demand was proved in this case.

But actual *intent* implies actual *knowledge*, and there can be no wrongful dispossession or wrongful exclusion, no adverse intent and adverse holding, where one is in the enjoyment of that which he honestly supposes is his, and has no knowledge that any other person has, or claims to have, a right to participate in the possession of it. A person who has received by inheritance from his father an estate, and is in the enjoyment of it, is in one sense holding adversely to all the world; but not in the sense in which the term is used in the law of disseisin. He has done and is doing no wrongful act. He has not dispossessed any one, and is not wrongfully excluding any one of whose right or claim he has any knowledge. He is not guilty of any wrongful intent. *Non constat*, if any one has any right or claims to have any, but that if apprised of the claim in a reasonable and proper manner he will admit it. He is honestly in the enjoyment of an apparent clear right; he knows of no other right to which he should yield, and is conscious of no duty unperformed. Before such a man can be subjected to the cost and damage demanded in an action of disseisin, it is just that the demandant should apprise him with reasonable precision of the nature of his claim, and give him reasonable opportunity to determine his duty and form his intent. So are all the analogies of the law, and less

than that would be a reproach to it. Without that in such a case there can be no sufficient evidence of an ouster.

In this case the evidence of Mr. and Mrs. Beckwith and Mr. Carter prove merely a renting of the property, the ordinary casual speaking of it as hers, and the payment of taxes as imposed by the assessors. This is admissible but " *equivocal* " evidence, and standing alone would not justify the finding of an ouster against a co-tenant. The plaintiff called the defendant as a witness, and she testified that the property was given her by her father, that she had occupied it as hers, and that no one had set up a title or claimed any right to it to her knowledge. In this she is not contradicted by the deposition of Mr. Newell. The letters of Mr. Newell are equivocal. They set up no specific title or specific claim to any real estate. One of them says that " a *part* of the house and *some* of the land which you occupy belong to the estate of Mr. Abel Lewis ; " what part of the house or what land is not stated. Another speaks of " rights belonging to the heirs at law which perhaps it is your duty peaceably to surrender." There is no reasonable and proper statement of a title in himself to a specified share of specific property, and no demand of possession. On the other hand there is a request to be informed what she will give him if he will relinquish his claim, a hope to receive " a satisfactory proposition," and other expressions which indicate, not a desire to be let into possession of a specific interest in specified real estate as co-tenant, but to obtain money, ostensibly as executor, for some possible and indefinite claim which he can make if not bought off. Under the circumstances it was just and lawful that the defendant should be fairly apprised of the specific property and the extent of the interest claimed, by whom claimed, and in substance by what title, that she might decide whether to admit or contest the right. The evidence shows conclusively that she was not thus apprised, and had not denied any right which she could admit and ought to have admitted, and the nonsuit was properly granted.

In this opinion the other judges concurred.