## JOHN H. CATLIN *vs.* HENRY DECKER.

It is undoubtedly true that one who enters into the possession of land in subordination to the title of the real owner is estopped from denying that title, while he holds actually or presumptively under it. But a trustee may disavow and disclaim his trust; the tenant the title of his landlord after the expiration of his lease; the vendee the title of his vendor after breach of his contract; and the tenant in common the title of his co-tenant; and drive the respective owners and claimants to their action within the period of the statute of limitation.

A tenant of land under an agreement to purchase which contemplates a continuing right of possession while the contract is being performed, and an absolute right of possession by virtue of its performance, may, on performance, deny the title of the vendor, and thereafter his possession will be adverse.

Therefore where in ejectment the defendant entered into possession of the demanded premises, under a contract with the plaintiff's grantor to purchase the same at a given price, payable in annual installments with interest, and while in such possession, claiming the contract to be in force, assigned his interest in it and in the land to *G.*, who proceeded to fulfil the contract as a contract in force, and having fulfilled it gave notice to the plaintiff's grantor that he

Catlin *v.* Decker.

should insis upon its benefits as a fulfilled contract, and should hold the land pursuant to it, and thereafter the defendant .continued in possession as the tenant of *G.*, of which the plaintiff's grantor had notice.

Held, that the defendant's possession was adverse as against the plaintiff's grantor, and that the action could not be maintained.

EJECTMENT to recover possession of a tract of land in the town of Litchfield; tried to the court (*Loomis, J.*) on the general issue with notice. The court found the following facts:

On the 9th of April, 1864, the title and possession of the demanded premises were vested in John Catlin of Litchfield; and on the same day John Catlin and the defendant agreed that said Catlin should sell and convey, and that the defendant should purchase the premises of him, for the price of two hundred and fifty dollars, to be paid in five annual installments of fifty dollars each and interest on or before the first day in April in each year, and on the same day Catlin executed to the defendant a penal bond conditioned for the performance of the agreement. On the same day the defendant, with the consent of said Catlin and pursuant to said agreement, entered into the possession of the premises. On the 21st of March, 1865, the defendant paid to Catlin the sum of sixty-five dollars, which was received in full for the first installment of the purchase price and interest due on the 1st of April, 1865; but no further payment or offer to pay has been made by the defendant toward the purchase price of the premises. On the 2d of April, 1866, the defendant, by an instrument in writing of that date under his hand and seal, assigned all his right and interest in said bond to Henry B. Graves, of Litchfield, and at the same time executed to said Graves a quit claim deed of the premises. From and after said last mentioned date, Graves, as assignee of said bond, undertook the performance of the condition thereof, and on the 26th of April, 1866, caused to be tendered to John Catlin the amount of the installment of the purchase price of the premises due by the terms of the condition of said bond on the 1st of April, 1866, with all the interest due up to that time, which Catlin refused to receive.

On the 1st of April, 1867, Graves caused to be tendered to John Catlin the installment of the purchase price, together with all the accrued interest due at that date by the condition of said bond, which Catlin refused to receive. In the year 1868 no money was tendered or paid Catlin by any person, toward the price of the premises or interest due by the condition of said bond. On the first of April, 1869, Graves tendered to Catlin the full amount of all the installments, with all the accrued interest due by the terms of the condition of said bond, and thereupon claimed that the condition of said bond had been fully performed, and demanded that Catlin should execute and deliver to him the deed mentioned in the condition of said bond; but Catlin refused to receive the money so tendered, and to give the deed as demanded; and Graves thereupon notified Catlin that said bond had been assigned to him, and that he had a quit claim deed of the premises from the defendant, and that he should thereafter claim and hold the premises as his own. The defendant has been in the actual possession of the premises ever since his first entry thereon pursuant to said agreement, and he has apparently occupied the premises in the same manner since said assignment and quit claim to Graves, as before, and has never given notice to John Catlin or the plaintiff that he occupied the same under Graves as his tenant, nor has Graves given any such notice, or any notice to the plaintiff or John Catlin, except as hereinbefore stated. The defendant offered parol evidence to show that from the date of the assignment and quit claim to' Graves, he had occupied the premises as the tenant of Graves by an arrangement between them, and had not occupied the same under Catlin after said last mentioned date; and that Graves, after the 1st of April, 1869, claimed and rented the premises to him as his own. To this evidence the plaintiff objected, and it was received subject to the objection. If this evidence was admissible, the court found the facts which it was offered to prove, and also found that John Catlin had no knowledge of this agreement, and the renting of the premises by Graves as aforesaid, except as stated, or may be implied from the facts hereinbefore

stated. On the 8th of October, 1869, John Catlin made, and delivered to J. Howard Catlin, the plaintiff, a warranty deed of the premises, in due form of law, which was duly acknowledged and recorded, and was good and effectual to convey and vest a complete title to the premises in the plaintiff, unless, by reason of the facts hereinbefore stated, John Catlin, at the time of the execution of the deed to the plaintiff, was ousted of the possession of the premises by the entry and possession of the defendant or of Graves.

The plaintiff after receiving the deed from Catlin, and before the commencement of this suit, entered upon the demanded premises, and there demanded of the defendant the possession of them, but the defendant refused to yield the possession, and ever since said demand has been in the actual possession of the premises.

The court reserved all questions of law arising upon the foregoing facts, and particularly the question as to the admissibility of the evidence before mentioned, and the question whether Catlin was ousted of the possession of the premises, so as to make his deed to the plaintiff void, and the question what judgment ought to be rendered, for the advice of this court.

*Andrews*, for the plaintiff.

1. The defendant having commenced his possession of the premises by consent of the owner, that possession can never become adverse. *Bryan* v. *Atwater*, 5 Day, 188, 189 ; *Emerson* v. *Goodwin*, 9 Conn., 421–429 ; *French* v. *Pearce*, 8 id., 439–443 ; 1 Swift Dig., 163.

2. The defendant is estopped to deny the title under which he entered into possession. He cannot set up any claim in opposition to the contract by which he obtained the possession. Certainly he cannot set up any such claim, or deny such title, till he has made an express disclaimer of holding under his first contract ; which disclaimer must have been brought to the knowledge of John Catlin. Without such notice the law will presume he held in accordance with the contract under which he entered. 1 Washb. R. Prop., book 1, ch. 10, secs.

8, 9 ; 2 id., book 3, ch. 2, sec. 6, § 10 ; *Greeno* v. *Munson*, 9 Verm., 37 ; *North* v. *Barnum*, 10 id., 220 ; *Zeller's Lessee* v. *Eckhert*, 4 How., 289 ; *Norris* v. *Smith*, 7 Cow., 717 ; *Shaw* v. *Spear*, 7 Wend., 401 ; *Alden* v. *Gilmore*, 13 Maine, 178 ; *Stearns* v. *Godfrey*, 16 id., 158 ; *Hodges* v. *Shields*, 18 B. Monr., 828 ; *Blight's Lessee* v. *Rochester*, 7 Wheat., 547 ; *Willison* v. *Watkins*, 3 Pet., 43 ; *Ingraham* v. *Baldwin*, 5 Seld., 47 ; Cowen & Hills's Notes to Phill. Ev., part 1, p. 201 ; *Russell* v. *Fabyan*, 7 Foster, 529 ; *Tuttle* v. *Reynolds*, 1 Verm., 80 ; *Coburn* v. *Palmer*, 8 Cush., 124 ; *Low* v. *Reynolds*, 1 Caines, 444 ; *Doe* v. *Smythe*, 4 Maule & Selw., 347 ; *Ball* v. *Lively*, 2 J. J. Marsh., 187 ; *Porter* v. *Mayfield*, 21 Penn. S. R., 262 ; *Cooke* v. *Loxley*, 5 T. R., 4 ; *Knox* v. *Hook*, 12 Mass., 329 ; *Averill* v. *Sanford*, 36 Conn., 345.

*Graves*, for the defendant.

BUTLER, C. J. A careful examination of the numerous authorities cited by the plaintiff has failed to satisfy us that the plaintiff's deed is valid.

It is undoubtedly true that one who enters into the possession of land in subordination to the title of the real owner, is estopped from denying that title while he holds actually or presumptively under it.

The plaintiff claims in his first point that the defendant, having commenced his possession of the premises by the consent of the owner, that possession can never become adverse. But the authorities do not sustain the position. There are authorities to the effect that a possession taken under the owner can never become adverse until after it has been *surrendered*. Some of the authorities cited, and particularly that of *Shaw* v. *Spear*, 7 Wend., 401, in which the opinion was given by Judge NELSON, sustain that doctrine. But Judge NELSON himself, after his accession to the Supreme Court of the United States, in the case of *Zeller's Lessee* v. *Eckhert*, 4 How., 289, alluded to this class of decisions, and the doctrine embodied in them, saying : " The law however has been settled otherwise. The trustee may disavow and disclaim his trust ; the tenant the title of his landlord, after

Catlin *v.* Decker.

the expiration of his lease ; the vendee the title of his vendor, after breach of his contract ; and the tenant in common the title of his co-tenant; and drive. the respective owners and claimants to their action within the period of the statute of limitations." This we apprehend is now the true rule.

Assuming then that Decker could not dispute the title of Catlin while the contract was in force under which he entered into possession, it is equally clear that if the plaintiff's grantor claimed that the contract was broken, upon failure of payment at the day, and insisted upon the benefit of the breach, it was competent for Decker to disclaim, and thereby render his possession adverse. If Decker then had disclaimed, we should have had no trouble with the law, or in holding his possession thereafter as adverse. Decker, however, did not disclaim, but claimed the contract to be in force, assigned his interest in it and in the land to Graves, and Graves proceeded to fulfil the contract as a contract in force, and having fulfilled it, gave notice to John Catlin that he should insist upon its benefits as a fulfilled contract, and should hold the land pursuant to it. The case we have then is not a disclaimer during the existence of a contract, when it could not, as against John Catlin, be made ; nor a disclaimer after a breach of the contract, insisted on as a breach by Catlin, when a disclaimer could have been made, but a claim that the contract had been fulfilled, and of a lawful right of possession, and to the title withheld by Catlin. We do not see how it could be successfully claimed, if Decker had himself fulfilled the contract by payment or tender of the installments respectively at the day, that an absolute right of possession would not have vested in Decker. Although in one sense he entered into possession with the consent of Catlin, he entered under an agreement which contemplated a continued right of possession while the contract was being performed, and an absolute right of possession by virtue of its performance. The amount of the purchase money was agreed upon, the amount and time of the installments agreed, and interest was to be paid upon the whole sum ; and the consideration for the interest was the continued and undisturbed possession of the premises by Decker.

This contract differs from those to which our attention has been called. Most of those were parol contracts, and there is no analogy between them. Judge SWIFT inclines to treat contracts of this character as in the nature of mortgages to secure the purchase-money, and as not broken by non-payment at the day. 2 Swift Dig., 91. But whether that is so or not has not been made an issue, and we need not consider the question. Nor is it necessary that we should consider the question whether Decker had an assignable interest in the bond or in the land. It is sufficient in this case that such conveyances were in fact made, and a contract of tenancy was entered into between Decker and Graves, and that Graves proceeded to fulfill the contract with Catlin, or at least attempted to fulfil it.

It being true then that the title of Catlin could be denied after the last installment was due, and the contract fulfilled or broken, that Graves in fact had an assignment of Decker's interest in the contract and land, that the possession of Decker was then as the tenant of Graves, and Graves was insisting that the contract was completed, and his right of possession absolute, it is obvious that the possession was adverse as against Catlin, if he had sufficient notice of the facts, whatever the legal rights of the parties might be. We think he had sufficient notice. Although it is not found that he had knowledge of the precise contract of tenancy between Graves and Decker, he did know that Decker was in privity with Graves, that Graves was tendering the installments under a claim of right, that he claimed the right of absolute possession on making the final tender, and he was explicitly notified that Graves would thereafter hold the premises as his own. From these circumstances a clear implication and presumption arise that Catlin knew that Decker was holding for Graves adversely, and the subsequent conveyance by Catlin to his son, and the manner of bringing the suit, tend to confirm the presumption.

For these reasons we think the deed of the plaintiff was invalid, and judgment should be rendered for the defendant.

In this opinion the other judges concurred.