LOUIS HERBERT LUCAS *vs.* LOUIS C. CROFOOT, ADMIN-
ISTRATOR, ET ALS.

Third Judicial District, Bridgeport, October Term, 1920.
WHEELER, C. J., BEACH, GAGER, CASE and HAINES, Js.

A deed by one cotenant of a portion of the common estate by metes and bounds is in itself legally ineffective as against his cotenants.

Whether the facts found by the trial court make out a case of adverse possession, is a question of law reviewable by this court upon appeal.

A deed by a cotenant which purports to convey the entire property is an assertion of his own title and a denial of the title of the other cotenants; and an entry upon the premises by the grantee in such a deed is under a claim and color of right, which is equivalent to an ouster of the other cotenants as to whom the grantee thereafter holds adversely.

A quitclaim deed by a cotenant, which recites that all the other cotenants have conveyed to him, is of as much value as a warranty deed in giving notice of the adversary character of the grantee's entry and possession thereunder.

Acts of ownership may constitute acts of adverse possession, or they may be consistent with a holding in cotenancy, depending upon whether the entry and possession were hostile, adverse, and under claim and color of title.

The facts in the present case reviewed and *held* to have warranted the conclusion of the trial court, that the plaintiff's entry and ouster were hostile when made in 1894, and that his possession thereafter was continuous, open, exclusive and adverse, for more than fifteen years.

A claim of ownership by adverse possession in an island may be established by evidence of less actual use than would be required, for

instance, if the premises were a tillable farm; for the location and condition of the land are to be considered in this connection.

Recognition of a possible right in the State, by one tenant in common claiming title to an island by adverse possession against his cotenants, does not aid the latter; for adverse possession may run against them even if the State has an interest in the island.

Continuity of adverse possession by one tenant in common as against his cotenants, is not broken by acts, whether of the cotenants or of others, which were not done with the purpose of asserting a right, and were not hostile to, or inconsistent with, such adverse possession.

Argued November 9th, 1920—decided January 6th, 1921.

SUIT to quiet and settle the title to Great Island in Greenwich Cove, brought to and tried by the Superior Court in Fairfield County, *Curtis, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendants other than Frederick A. Hubbard, whose mortgage interest was recognized and confirmed by the judgment. *No error.*

*John C. Chamberlain* and *Albert A. Goldner,* with whom, on the brief, were *George P. Rowell* and *Nichols C. Downs,* for the appellants (defendants).

*Clement A. Fuller,* for the appellee (plaintiff).

HAINES, J. The reasons of appeal relate chiefly to rulings upon evidence, to finding or failing to find certain facts, and to the denial of a motion for certain changes in the finding; and they challenge the decision of the court as to the legal effect of the facts found. It is to the latter that the appellants' brief is devoted and upon which the arguments in this court chiefly turned.

The entire evidence has been certified to this court, and a careful reading of that, and consideration of the various rulings complained of, disclose nothing vital or of a sufficiently serious character to warrant us in

disturbing them, or the finding as amended, or the marking by the court of the defendants' request for finding. Moreover, most of the claimed errors relate to matters of relative unimportance in the view which the court takes of this case.

The essential and controlling questions raised by the appeal are, first, whether the facts developed at the hearing are legally sufficient to constitute adverse possession by the plaintiff and his predecessors between March 3d, 1894, and May 19th, 1915, the beginning of this action; second, whether the facts found show, during that period, an admission of the defendants' title, and so negative the claim of exclusive holding; and third, whether the claimed adverse possession was interrupted and not continuous. An adequate consideration of these questions requires that we bear clearly in mind the main facts in the history of this title.

Great Island became the property of James Ferris about the year 1783, and he held it unincumbered and so transmitted it to his three sons, Asa, Abel, Sr., and Shadrach. Though no conveyance of Shadrach's interest thereafter appears of record, it is agreed by all the parties hereto that Abel, Sr., in fact acquired the interests of his two brothers and became the sole owner. The complaint makes "the heirs" of Shadrach Ferris parties defendant, but they have made default of appearance, and, furthermore, have never claimed any interest in the property, and they are barred by the present proceedings. It is agreed by the parties hereto that Abel Ferris, Sr., held the entire title till his death, sometime prior to 1844, when it vested jointly in his two children, Abel Ferris, Jr., and Maria Ferris. There was no administration on the estate of Abel Ferris, Sr.

There is no record of a partition of their interests in Great Island by Abel, Jr., and Maria. Although there was a partition between them of real estate which their

father had owned on the mainland, no mention is made of Great Island. Maria Ferris married one Ammi Ferris. In 1848 Abel, Jr., gave a *warranty* deed of the southern part of the island to Oliver L. Ford, describing it as bounded on the north by "land of Ammi and Maria Ferris." As the record discloses no record of the partition of the island between them, this transfer by Abel, of his interest by metes and bounds, is in itself legally ineffective as against the cotenants. *Hartford & Salisbury Ore Co.* v. *Miller*, 41 Conn. 112, 129. However, the evidence satisfied the trial court that, by some means not appearing of record, an agreement of partition, at least, had actually been reached between them before this deed was given. Such color of title as Oliver L. Ford took by this deed, passed at his death to Frelinghuysen Ferris and thirteen others, and by various transfers ultimately vested solely in Frelinghuysen Ferris.

Maria Ferris died in 1872, and such interest as she had in Great Island passed to her five children, whose successors are the present defendants. Only two tracts of land are mentioned in the inventory of her estate, one of which was at a distance from Great Island and was conveyed to strangers. The other tract, comprising about eleven acres, extended from Long Island Sound, on the east, across the neck of land leading to Greenwich Point, and its western boundary was Greenwich Cove, in which Great Island lies. The highway—Greenwich Point Road—passes through the tract north and south. The heirs of Maria Ferris divided this property, and by deed from the other heirs, A. Roswell Ferris received the west portion of the tract—that portion adjoining the Cove. This transfer contains no reference, in terms, to Great Island; but on December 5th, 1893, about six years later, A. Roswell Ferris, by quitclaim deed, conveyed all his interest in the

north part of Great Island to Frelinghuysen Ferris, reciting that it was the same premises of which his father and mother, Ammi and Maria Ferris, had died seized, and that the interests of the other heirs of Maria Ferris had been acquired by him by the deed of partition referred to. It is apparent that he believed or assumed that the transfer to him of the eleven-acre mainland tract carried with it the interest of Maria Ferris in Great Island, which lay off the shore adjoining, and the other heirs appear to have acquiesced in this view. The gap in the record, however, remained.

Frelinghuysen Ferris now held deeds purporting to convey to him both the south part and the north part of Great Island, and in 1894 he deeded the entire island to Edwin J. Lucas, J. Frank Wright, and Richard W. Turner. In 1908 Edwin J. Lucas became sole owner, and immediately deeded the island to the plaintiff. This completes the essential available history of the record title of the island.

Because of the gaps in the record, already referred to, the full legality of the plaintiff's title can only be made out by proof of all the elements of an adverse possession for the statutory period of fifteen years. The plaintiff has sought to show this adverse possession, beginning with the holding of Frelinghuysen Ferris and the deed given by the latter to Lucas, Wright, and Turner on March 3d, 1894. It is the province of the trial court to find the facts upon which the claim is based. Whether those facts make out a case of adverse possession is a question of law reviewable by this court. *Layton* v. *Bailey*, 77 Conn. 22, 28, 58 Atl. 355; *Spencer* v. *Merwin*, 80 Conn. 330, 336, 68 Atl. 370.

The first and vital step in the plaintiff's case must be the proof of an entry upon the premises and an ouster of the other cotenants. In *Burns* v. *Byrne*, 45 Iowa, 285, 287, the court say: By ouster "is not meant a

physical eviction, but a possession attended with such circumstances as to evince a claim of exclusive right and title, and a denial of the right of the other tenants to participate in the profits." As otherwise stated: "An entry . . . on the land of another, is an ouster of the legal possession arising from the title, . . . if made under claim and color of right; . . . otherwise it is a mere trespass. . . . The intention guides the entry, and fixes its character." *Ewing* v. *Burnet*, 36 U. S. (11 Peters) 41, 52; *Newell* v. *Woodruff*, 30 Conn. 492, 498. The deed of Frelinghuysen Ferris to Lucas, Wright and Turner, in 1894, was a deed by a cotenant, but purporting to convey the whole title. The effect of it was to assert his own title and to deny the title of the other cotenants. *Searles* v. *DeLadson*, 81 Conn. 133, 70 Atl. 589. When the grantees recorded this deed and entered and took possession thereunder, their possession is presumed to have been under the deed itself and not under the title of the cotenants. They entered under a claim and color of right, and this is equivalent to an ouster of the other cotenants, as to whom they thence held adversely. It showed "an actual intent to exclude the cotenant permanently from his rights." *Newell* v. *Woodruff*, 30 Conn. 492, 497.

The case of *White* v. *Beckwith*, 62 Conn. 79, 82, 25 Atl. 400, is in accord with the principle above applied, though the words there used relate to an entry "under a deed purporting to convey the whole estate with warranty." The defendants urge that the deeds under which the north part of the island was conveyed were quitclaim deeds, and that a quitclaim of all the grantor's "right, title and interest" is not inconsistent with the existence of an interest in cotenants, and does not deny that interest. This distinction between the effect of a warranty and a quitclaim deed generally, is doubtless valid; but a deed which, though in form a quitclaim,

contains in express terms a disclaimer and disavowal of any interest in cotenants or others, is of as much value as a warranty deed could be in giving notice of the adversary character of the entry and possession there-under. In *Cady* v. *Fitzsimmons*, 50 Conn. 209, 214, a deed by selectmen (presumably a quitclaim), which was in fact unauthorized and passed no title, was held to characterize the possession thereunder. In *Rogers* v. *Hillhouse*, 3 Conn. 398, 403, an unacknowledged deed was held to have the same effect, the court remarking that it "was good proof to show the nature of the occupancy, and that it was adverse"; and it was added that "any evidence conducing to prove that the possession was accompanied with a claim of title, and that it was the intention of the possessor to hold exclusively for himself," was undoubtedly admissible to support title by adverse possession.

A. Roswell Ferris, in deeding the north part of the island, explicitly states that all the other tenants had conveyed to him; they had no further interest in that part of the island. The deed of the south part by Abel Ferris in 1848, expressly warranted the title to that portion of the island against the claims of all other persons. It may fairly be considered that we have here reached a vital point in the case at bar, for the acts of ownership on which the plaintiff relies to support his claim of adverse possession are all characterized by the entry under these two deeds. The acts upon which the plaintiff relies are consistent with a holding in cotenancy, if the entry and possessisn were not hostile; but, being hostile, adverse, and under claim and color of title, they are clearly acts of adverse possession, and obviously consistent with the disclaimer and disavowal of other tenants' interests, under which possession was taken. The effect was to "drive the respective owners and claimants to their action within the period of the

statute of limitations," if they would protect their own rights. *Catlin* v. *Decker*, 38 Conn. 262, 267.

We hold the initial requirement of hostile entry and ouster to have been met and satisfied by the facts found, and the possession thus shown to have been adverse in 1894. It remains to consider whether it was continuous and exclusive, open and notorious, for fifteen years after December 3d, 1894. The trial court holds that the facts found justify an affirmative answer to this question. The various acts enumerated, considered in the light of the decision already reached as to their adversary character, coupled with the further fact that none of the defendants or their predecessors in title took any exception to these acts of ownership, and made no hostile move in support of their own title for more than twenty years following 1894, permits no other fair conclusion than that reached by the trial court.

Very much less actual use of this island is necessary to establish claim of ownership than would be the case of a tillable farm, for example. The island was never used by anyone to a very great extent. "The location and condition of the land must be taken into consideration and the alleged acts of ownership must be understood as directed to those circumstances and conditions." *Benne* v. *Miller*, 149 Mo. 228, 241, 50 S. W. 824.

We do not lose sight of the claim of the defendants, that during the fifteen-year period the interests of the cotenants were admitted and recognized by the language of the quitclaim deeds containing the words "all my right, title and interest," or similar expressions, and by the tax lists, which refer to the plaintiff's interest as the "interest on two islands, Great Island and Cedar Island." While it is true that this language does not necessarily import an exclusive ownership, yet it is not inconsistent with it, and it does not necessarily

admit an interest in any other person, and certainly not in the defendants. It is unnecessary to examine the reasons found for the use of this language, further than to say that, so far as it showed a doubt of exclusive ownership at all, it had reference to a possible right in the island which it was thought by some the State might assert. This cannot aid the defendants, for adverse possession could run against them, even if the State had an interest in the island. *Price* v. *Lyon*, 14 Conn. 279, 284.

Similar reasoning applies to the defendants' claim that the continuity of possession was broken by various acts of others. Furthermore, it does not appear that any acts were done by any one with the purpose of asserting a right, or were in any way hostile or inconsistent with the plaintiff's possession, and whether acts of the defendants or others, they were mere trespasses.

There is no error.

In this opinion the other judges concurred.