# MIFFLIN BRIDGE CO. v. COUNTY OF JUNIATA.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF MIFFLIN COUNTY.

Argued May 26, 1891—Decided October 5, 1891.

[To be reported.]

1. When a bridge is taken by a county for public use, under the act of May 8, 1876, P. L. 131, and its supplements, the measure of damages is the value of the property to the owners, not to the county taking it; and the property so to be valued includes not only the bridge structure but also the company's franchises.

2. The value of the structure, the amount of net tolls collected upon it, and the market value of the capital stock of the bridge company are all elements to be considered in ascertaining the value of the bridge and its corporate franchises; no one of them, however, standing alone would in all cases furnish a test.

3. A bridge having been taken by a county soon after the rebuilding thereof, and a witness who had taken the contract for the superstructure being called for the bridge company to testify to the value thereof, an objection that the witness should be asked to state the contract price, instead of an estimate of value, was not well taken.

4. The true question was the value of the bridge, not what it cost; and the county was bound to pay for it at its actual value at the time of the taking. Nor, was it error to reject an offer to cross-examine the witness as to the contract price of the bridge, and what its construction had cost the company.

5. The cost of repairing and enlarging the piers, in connection with the rebuilding of the bridge after its destruction by a flood, was irrelevant; and an offer by the county to show the entire cost of such repairing and enlarging the piers, "as evidence to show the value of the property taken by the defendant," was properly rejected.

6. An offer by the county to show what it could have erected a new bridge for, was irrelevant. Having taken the bridge of the plaintiff company, in preference to erecting a new bridge itself, the county was bound to pay for the bridge, so taken, at its value to the company from which it was taken.

7. The value of the capital stock of the bridge company being an element to be considered in ascertaining the damages, returns made by the company to the auditor general, for purposes of taxation, setting forth a valuation of the stock upon the oaths of its officers, were admissible against it.

(a) The defendant county requested the court to charge that the jury, in estimating the value of the bridge, were to take into consideration its liability to destruction by flood and ice. In answer, the court said:

" If the jury find the property was so liable, this may be considered to the extent that this liability decreased its value : "

8. It was not error to use the word " may," in such answer, instead of instructing the jury that they " must" consider the matters referred to ; the jury could not fail to understand that if the liability to destruction from flood and ice lessened the value of the property, their verdict should be reduced to that extent.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 298 January Term 1891, Sup. Ct.; court below, No. 16 August Term 1890, C. P.

On April 22, 1889, proceedings were commenced in the Court of Quarter Sessions of Juniata county, under the act of May 8, 1876, P. L. 131, and its supplements, for the taking, as a county bridge, of a wooden bridge erected and maintained by the Mifflin bridge company over the Juniata river, at Mifflin in said county, by virtue of an act of incorporation approved March 5, 1828, P. L. 152, and for the assessment of the damages which might accrue to the company by reason of such taking.

While the proceedings were .pending, a flood, occurring on June 1, 1889, swept away the superstructure of the bridge and damaged the piers. The company having rebuilt the bridge, repairing and enlarging the piers, and placing thereon an iron superstructure, the viewers appointed in said proceeding made a report on January 24, 1890, finding that the bridge should be made free of tolls, and valuing it at $25,000. On February 6, 1890, the report was approved; and it was ordered that the county of Juniata should take possession of the bridge, and that the collection of tolls thereon should cease. On March 11, 1890, the bridge company appealed from the assessment of damages to the Court of Common Pleas, and on the same day applied for a change of venue. The court, after framing an issue between the bridge company as plaintiff, and the county of Juniata as defendant, awarded a change of venue to Mifflin county, and the issue was accordingly certified to the Court of Common Pleas of the latter county.

At the trial, on August 25, 1890, the plaintiff, the bridge company, called L. G. Brown, who testified that he was the contracting agent of the King Bridge Company ; that on be-

half of that company he contracted for the erection of the Mifflin bridge in 1889, and that on an average he made estimates on at least one hundred bridges every year. The plaintiff then offered to prove by the witness " the actual value of the superstructure."

Defendant's counsel objected, " because this witness has testified that he contracted for and built the bridge. We do not object to his testifying as to what the contract price was, and what its actual cost was; but we do object to his testifying to any imaginary value that he may put upon it."

By the court: The measure of damages, in the case on hand, is not to be ascertained and settled by the contract price paid for the bridge by the plaintiff company, because they might pay an excessive price on the one hand, or have obtained it for less than it was actually worth on the other. The witness may state, if he knows, what in his judgment would be a fair price between man and man for the superstructure of the bridge as it was located on the piers at the time the defendant seized and appropriated it to its own use. For these reasons, we overrule the objection and admit the evidence; exception.[1]

The witness then stated that a fair price for the superstructure in the market, as bridges ordinarily sell, would be at least $16,500.

On cross-examination, the witness was asked: " Q. Your company built this bridge? A. Yes, sir. Q. What did it cost the bridge company? "

Objected to, because it is irrelevant and immaterial.

By the court: It looks to us that it is a matter of indifference what the plaintiff company paid for the structure. It is a matter of indifference to the defendant whether it got it for nothing, or whether it got it at a nominal rate, or whether it paid an excessive price. The proper value, after all, is what it was reasonably worth at the time of its seizure and occupancy by the defendant, and for that reason we sustain the objection and reject the evidence; exception.[2]

Defendant's counsel offer to ask the witness " what the contract price was, of the King Bridge Company with the plaintiff, for the erection and construction of this bridge, and what the plaintiff paid the King Bridge Company for it; this, for the purpose of showing what the actual worth of the bridge

Statement of Facts.

was, and as a test of the judgment of the witness on the stand as to its actual worth."

Objected to, because it is immaterial to the issue.

By the court: Objection sustained, for the reason given in rejecting the preceding offer; exception.[3]

R. E. Parker, treasurer of the plaintiff company, having testified for the plaintiff that he had superintended the reconstruction of the bridge, after the flood of 1889, and that the masonry put into the piers in repairing and raising them was first-class in quality, defendant's counsel offered to ask the witness, upon cross-examination, what was the actual cost to the company of repairing the abutments and building up the piers, this being offered " as some evidence to show the value of the superstructure, and also to show the number of perches of stone in the superstructure."

Objected to, first, " because these were simply repairs, and we are here to ascertain the value of the whole, both old and new; no separation has been made on the other side between the old and new, and the test is, not what it cost to do the work, but what it was worth when it was done is the criterion of the value."

By the court: Objection sustained, evidence rejected; exception.[4]

In the defendant's case in chief, an offer was made to prove by R. E. Parker and other witnesses what the entire cost of the masonry and stone work was, to repair the damages done by the flood of 1889, and upon which the present bridge superstructure was erected. This was offered " as evidence to show the value of the property taken by the defendant under the act of assembly."

Plaintiff's counsel objected, " because the testimony of witnesses in regard to the value of this masonry per perch is the best evidence ; that what it might have cost is not an element or indication of what it is worth, because they may have made a bargain ; and that the value of the old bridge would not be taken into account."

By the court: The damages are not to be ascertained by what it cost, but by what it was worth at the time of the seizure. We therefore sustain the objection and reject the evidence; exception.[5]

Statement of Facts.

Defendant's counsel offered certified copies of the returns made by the bridge company to the auditor general, of the value of its capital stock for the years 1881 to 1889 inclusive ; this for the purpose of showing the estimate and value of the capital stock of said company, as made by the company itself, under oath by its authorized officers.

From the returns in question, it appeared that the paid-in capital of the company was $15,150, divided into 606 shares of stock, of the par value of $25 each ; that in the years 1881 and 1884 the company declared dividends of less than six per cent ; in the years 1882 and 1883 no dividends at all, and in each of the years 1885 to 1889, inclusive, dividends in excess of six per cent ; and that the treasurer and secretary of the company reported to the auditor general appraisements of the capital stock as follows : 1881 and 1882 at $25 per share ; 1883, at $16 per share ; 1884, at $20 per share ; 1885, at $22 per share ; and 1886 to 1889, inclusive, at $25 per share.

The offer was objected to, first, " because it is not evidence for the purpose offered. The value of the property of the bridge company is the actual worth of the superstructure and the franchises ; this at best would be but the opinion of the people who made it. The jurors in this case are to determine from all the evidence what is the value of the property and its franchises. We also object because the stock may not have been of any more value, in point of fact, when the returns were made, because this bridge had been carried away by floods at different times, and it was compelled to renew its structure from time to time, involving the company in large expenses and in debt, and until these were paid and out of the way, the stock could not have declared a dividend and might have been of very small value ; and therefore the valuation put upon the capital stock is not evidence of the value of the corporation, either as to its physical property or its franchises. We also object, because it shows no appraisement of the value of the present bridge which the defendant took ; that the last return made would be whilst the bridge was undergoing reconstruction, by which the company involved itself to the full extent of the cost of the superstructure and the new masonry, and thus the capital stock would be rendered valueless for the time being."

Statement of Facts.

By the court: I am of the opinion that the objections are well taken, and that the returns made by the officers of the company to the auditor general, for the purposes of taxation, are not evidence to fix the value of the corporate property at the time it was taken by the defendant on the sixth day of February, 1890, and therefore reject the evidence ; exception.[6]

Defendant then offered, by itself, the appraisement of 1889, sworn to by the treasurer and secretary on November 16, 1889, to show that "at that time these officers, in pursuance of their duty as enjoined on them by the act of assembly, valued and appraised the capital stock of the bridge company at $25 per share, amounting in the aggregate to the sum of $15,150 ; to be followed by proof that at the time this report and appraisement were made, the contract for the superstructure of the bridge had been entered into and its cost thus ascertained, the piers, abutments and approaches had then been completed, or nearly so, and their cost ascertained, so that the company knew at that time what the value of the stock was ; this for the purpose of showing that the stock, which represents the corporate property, was no more valuable at the time the bridge was taken on the sixth day of February, 1890, and to show its actual and real value at the time it was taken."

Objected to, for the same reasons as given before.

By the court: Objection sustained ; evidence rejected ; exception.[7]

Defendant's counsel offered to prove "what a new bridge could be erected for at this point, in all respects equal to the one erected by the plaintiff and taken by the county, at the point at which that bridge stands between Mifflin and Patterson ; this offer being for the purpose of showing the value of the bridge taken by the county of Juniata."

Objected to, "because it is not evidence for the purpose offered. The true test of value is the value of this present structure, as testified to by the witnesses ; and if any other testimony was required, they could bring anybody here, who may make it very much below its actual cost. If the county was desirous of building such a bridge, they could have built one without taking ours."

By the court: Objection sustained, evidence rejected ; exception.[8]

·Charge of Court below.

The testimony being closed, the court, BUCHER, P. J., charged the jury in part as follows :

The measure of damages, in this case, like every other question of this character, is full compensation for the injury sustained; that is the measure of the damages. This defendant had the right to take the property of the plaintiff against its will, bounded by the limitation that when it did so it would pay the full value of the property thus appropriated. Now, the Supreme Court has said, in a similar case, that in estimating the damages for property of this character, the property and franchises of a bridge company are represented by its stock, and the market value of the stock may be said to represent the market value of the property taken, as nearly as it can be ascertained. But, in the case on hand, we have no evidence of the market value of this stock. This stock was not listed on the stock exchanges of the commercial centres of the country, where it was sold daily, nor have we any evidence that it passed readily from hand to hand by sale and transfer in the borough of Mifflintown, where the bridge was located. [It seems that this stock was held by a comparatively few, and there was no real market for it, not because it had no value, but because there were no purchasers, or no sellers ; so, in the absence of evidence of the market value of the stock, the jury must get at the damages as best they can.] [9] I, therefore, charge you that, in estimating the damages, in this particular question, ·you are to take into consideration the value of the physical structure at the time the county of Juniata appropriated it to its own use ; and this value must be arrived at by taking into consideration the length and width of the structure, the number of the piers that supported the superstructure, the value of the masonry, the value of the fill and abutments, as well as the superstructure, and to that you are to add the value of the franchise.

This franchise is an impalpable, invisible thing, that the jury cannot lay their hands on, or see with their eyes ; nevertheless it may be a very valuable thing, and worth really more than the physical structure in the particular case. I am not saying that this is the case here, but whatever the rights to take tolls were, which constitute the franchise here, that is an element of damage to be computed by the jury, and that is to be added to the physical structure at the time of the appropriation of this bridge

Arguments.

by the county.   [Now, the value of a bridge structure, as well as the value of the franchise, depends to a very great extent upon the locality in which it is located.   Let me illustrate : A company goes down into the narrows, between this borough and the borough of Mifflintown.   Down in the centre, about nine miles from the face of man at either end of the narrows, they erect a structure that would withstand flood and ice, and expend fifty thousand dollars for it.   If the county would come and seize that, it would not be so valuable, being located in a sparsely settled country where there were no passengers to cross it, and no traffic to go over it, as it would be in the borough of Mifflintown, the county town of Juniata.   So, in determining the value of it, you will have to consider the fact that it spans the river at the county town of Juniata, and take into consideration the nature of country around it, the number of the population, and the amount of travel that would naturally go over it, with the revenues that the traffic would bring to the coffers of the plaintiff company.] [10]   Now, you have heard the character of this structure described by the witnesses on both sides. . . . .

The court is requested by the defendant to instruct the jury :

1. That in estimating the value of the property, the jury are to take into consideration the liability to the destruction of the property by flood and ice.

Answer: Affirmed.   If the jury find that the property was liable to destruction from flood and ice, this may be considered to the extent that this liability decreased the value of the property.[11]

—The jury returned a verdict for the plaintiff for $52,708.50. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error :

1. The admission of plaintiff's offer.[1]

2–8. The refusal of defendant's offers.[2 to 8]

9, 10. The parts of the charge embraced in [ ] [9 10]

11. The answer to defendant's point.[11]

*Mr. Alfred J. Patterson* and *Mr. D. W. Woods*, for the appellant :

1. The witness, L. J. Brown, was the contracting agent of the King Bridge Company, which had just erected this bridge.

He testified as to his opinion respecting the actual value of the superstructure, and it was proper on cross-examination to ascertain what the bridge cost, what the contract price was, and what the plaintiff paid the King Bridge Company for it. These were factors upon which the witness must have based his opinion, and the defendant was entitled to inquire about them, to test the accuracy of his estimate : Hoffman v. Strohecker, 9 W. 183; Perit v. Cohen, 4 Wh. 81; Markley v. Swartzlander, 8 W. & S. 172; Bank v. Fordyce, 9 Pa. 275; Jackson v. Litch, 62 Pa. 451; Henderson v. Hydraulic Works, 9 Phila. 100.

2. Parker, who superintended the repair of the abutments and piers, possessed the knowledge requisite to give intelligent information as to the actual cost of those repairs, and such information would have been important to enable the jury to reach an intelligent conclusion in the matter of damages. Our offers to prove the actual cost of the bridge, and what competent builders would contract to erect a similar bridge for, were legitimate evidence upon the value of the bridge taken. Why should we not be permitted to show its actual cost? The company knew, when constructing it, that the county intended to take it, and it had no right to speculate upon the county. Questions as to the cost were proper: Kersey v. Railroad Co., 133 Pa. 236.

3. The returns made to the auditor general were the official acts of the corporation, and were competent evidence as to the value of the property: Lynch v. Lively, 32 Ga. 575; Ronkendorff v. Taylor, 4 Pet. 349; State v. Gorham, 65 Me. 270; Clarke v. Dougan, 12 Pa. 87; 1 Greenl. Ev., §§ 108, 113, 114, 180, 332; Grim v. Bonnell, 78 Pa. 152; Magill v. Kauffman, 4 S. & R. 317; Toll Bridge v. Betsworth, 30 Conn. 380; La Salle Co. v. Simmons, 10 Ill. 216; Railroad Co. v. Ingles, 15 B. Mon. 637; 2 Whart. Ev., §§ 1078, 1122, 1209, 1213; 2 Starkie on Ev., 40, 41. And the answer to defendant's point was too vague to give the jury an adequate conception of the importance of the point. It is error not to answer a point fully: Penna. R. Co. v. Toomey, 91 Pa. 256. Instead of saying that the liability of the bridge to destruction by flood and ice "may be" considered in estimating its value, the court should have said that this must be considered.

Opinion of the Court.

*Mr. B. F. Junkin* and *Mr. A. Reed*, for the appellee:

1. It is clear that the jury had nothing to do with the contract price of the bridge. As the court said, it was a matter of indifference whether the company got it for nothing, or at a nominal rate, or paid an excessive price; and the real question was one of market value. The returns made to the auditor general were not admissible. Section 2, act of June 7, 1879, P. L. 112, does not require a valuation of the stock when dividends of six per cent or more are paid. In such case, all that is required is a report of the par value of the stock. It is only when the dividends are nothing, or less than six per cent, that the treasurer and secretary are required to appraise the value of the stock in cash.

2. The appraisements for 1885 to 1889 were therefore a work of supererogation. Had the returns been received, they would have necessitated a collateral inquiry as to the causes which reduced the stock in 1883, 1884 and 1885. Besides, they were made for the old wooden bridge, and not for the new iron structure taken from the plaintiff. Again, they were made for purposes of taxation, and the stockholders could not be prejudiced by anything the treasurer and secretary might do. It was not the stock that was taken by the county, but the structure and the franchise. A corporation may own property worth five times the par value of its capital stock, and the stock was not an element in the controversy. The objection to the answer to the defendant's point is hypercritical. " May " often means must, and it is the usual form employed by judges in instructing juries.

OPINION, MR. CHIEF JUSTICE PAXSON:

It was held in Montgomery Co. v. Bridge Co., 110 Pa. 54, that where a bridge is taken by a county for public use, under the act of May 8, 1876, P. L. 131, the measure of damages is the value of the property to the owners, not to the county taking it, and that such value is to be ascertained, not only by the cost of the structure, but also by the value of its franchises. The value of its franchises depends largely upon its earning capacity. A bridge, as was observed in the case cited, is a peculiar kind of property, and seldom has a market value. The value of its capital stock may, and generally does indicate,

with some accuracy, the value of its franchises. Hence, in an action against a county for taking a bridge, the cost or value of the structure, the amount of net tolls, and the market value of its capital stock are all elements to be considered in ascertaining the value of the bridge and its corporate franchises. No one of these elements, standing alone, would, in all cases, furnish a test; considered together, they will seldom fail to lead to a satisfactory result.

The first three assignments may be considered together. The witness, L. G. Brown, was asked as to the value of the bridge, by which I understand to be meant the superstructure only. This was objected to, on the ground that Brown, having contracted for the erection of the bridge, should have been asked as to the contract price. We do not think this objection well taken. The true question was the value of the bridge, not what it cost. The contractor may have taken it at too low a figure, or the owner may have paid too much. The county is entitled to pay for it at its actual value at the time of taking.

The fourth and fifth assignments allege that the court below erred in rejecting evidence in reference to the cost of certain repairs to the bridge. The evidence was clearly irrelevant, and properly rejected.

The sixth assignment is more serious. The defendant offered a certified copy of the return made by the bridge company of the value of its capital stock to the auditor general, under oath, from the year 1881 up to the present time. This was offered for the purpose of showing the value of the capital stock as made for the company under oath by its officers. The capital stock represents the property and franchises of the corporation, and, as before observed, is an element to ascertain the damages. The plaintiff had given in evidence, to show the value of the capital stock or franchises, the receipts from tolls for 1884–89. It was clearly competent, therefore, for the defendant to show the value placed by the company upon its own stock, a valuation made upon the oath of its officers. It is no answer to this to say that the return was made by the officers, and not by the stockholders. The officers were the duly constituted agents or representatives of the latter, and their act was the act of the corporation itself. The return was made in pursuance of the act of assembly, and was the official act of the corporation.

Hence we need not discuss the cases cited as to the power of an agent to bind his principal by his declarations. They are not relevant. While this return does not conclude the bridge company upon the question of value, it is nevertheless competent evidence for the consideration of the jury, and is moreover important. The difference between the verdict and the valuation placed upon its property by the company, under the oath of its officers, is so great as to justify the suggestion that the verdict was too large, or the company has undervalued its property to escape taxation.

What has been said covers the seventh assignment. The eighth assignment is not sustained. It was not relevant to show what the county could have erected a new bridge for, at this or some other point. The county might have erected a new bridge, but it preferred to take the bridge of the plaintiff, and must pay for it at its value to the latter.

The remaining assignments refer to the charge of the court, and are not sustained. The learned judge said, in answer to the defendant's first point: "If the jury finds that the property was liable to destruction from flood or ice, this may be considered to the extent that this liability decreased the value of the property." This was an affirmance of the point, but the defendant complains that it was not strong enough, and that the learned judge should have instructed the jury that they *must* consider the matters referred to, instead of that they *may* do so. This is somewhat of a refinement. The jury could not fail to have understood that, if the liability to destruction from flood and ice lessened the value of the property, their verdict should be reduced to that extent.

> The judgment is reversed, and a venire facias de novo awarded.