FRANK D. LAYTON *vs.* FRANK T. BAILEY ET AL.

Third Judicial District, Bridgeport, April Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

It is questionable whether an ordinary action of ejectment is maintainable under General Statutes, § 4053, which provides a special equitable remedy for determining and quieting the title to real estate. But if maintainable, it must be tried and determined as an action of ejectment and the plaintiff must prevail on the strength of his own title, not on the weakness of the defendant's.

In the present case the plaintiff alleged a title in fee to the land in dispute, which the defendants denied, and also averred title in themselves by adverse possession. The trial court found that the plaintiff had failed to prove a legal title in himself, and that the defendants had established a title in themselves by adverse possession. *Held* that inasmuch as the finding as to adverse possession was free from error, it was unnecessary to consider the alleged errors of the trial court in reaching its conclusion that the plaintiff had failed to prove title in himself.

The determination of the trial court upon the question of adverse possession will not be reviewed by this court as a conclusion from evidential facts, unless it appears that such facts, or some of them, are legally or logically inconsistent with that determination.

Certain evidential facts reviewed and *held* not to necessarily impugn the conclusion reached by the trial court as to adverse possession.

Argued April 21st—decided June 14th, 1904.

ACTION to determine the title to certain real estate in the town of Norwalk, brought to and tried by the Superior Court in Fairfield County, *Thayer, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiff. *No error.*

In 1855 one William H. Benger, the plaintiff's predecessor in title, bought a half acre of land, with a house thereon, described in the deed as follows : " Bounded northerly and easterly on highway ; southerly on land of Anson Quintard and heirs of James Quintard, and westerly on land of Fanny Saunders, wife of Thomas Saunders." The land mentioned as the southerly boundary belonged to the defendants' predecessor in title, and was called " The Pottery lot." The house fronted on the northerly highway, now known as Ann Street. The easterly highway was an ancient wagonway extending from the northerly highway at the northeast corner of the Benger lot, along the hard land or upland following the highwater mark to the northerly boundary of the Pottery lot. Easterly and northerly of this highway marsh and mud flats extended to the river, and at very high tides the highway would be submerged. The easterly highway followed a direct line from the present Ann Street, in a southerly direction, to within a short distance of the south line of the Benger lot, where it turned, following an easterly direction to the northeast corner of the Pottery lot. Soon after Benger's purchase he built a fence extending from the northeast corner of his land along the side of the easterly highway to the point where it turned easterly, and thence continued the fence in a straight line to the Pottery lot. This left a gore of upland between the fence and the highway and the mud flats beyond, as shown in the map. (See p. 24.) In building this fence Benger placed a small gate nearly opposite the rear of his dwelling-house, which was subsequently used in going to and from the rear of the house, and placed a large gate a short distance northerly of the point where the highway turned in an easterly direction, which was subsequently used for carting in fertilizer upon the garden and for other purposes until within about twenty-five years of the commencement of this action.

It was claimed by the defendants, that since 1831 this gore of upland, bounding northerly on the highway, was included in the land conveyed by the deeds in evidence, under which the owners of the Pottery lot claimed title. This

claim was controverted by the plaintiff. The court found, as above stated, that shortly after his purchase Benger fenced his land (which had not been fenced before) by a fence as above described, leaving the small gore of upland adjoining

the Pottery lot outside the fence, and that prior to 1884 owners of the Pottery lot, at different times, under deeds bounding it northerly on the highway, occupied this gore of upland and placed timber and lumber thereon, and also began to fill in the marsh in the angle of the highway. In

1884 they further filled in the marsh, and the highway (by what authority did not appear) was carried east to its present location, extending in a straight line from Ann Street, at the northeast corner of the Benger lot, to the northeast corner of the Pottery lot, and forming a part of North Water Street, as shown in map 2. In September, 1884, James S. Bailey,

whose heirs are the present defendants, purchased the Pottery lot under a deed bounding it northerly on the highway. Since 1884 the owners of the Pottery lot have continuously

and exclusively occupied, as a lumber-yard, the land between the Benger fence and the present highway, now a public highway and a part of North Water Street, being the triangular piece of land in dispute, as shown in map 2. Their possession was open, adverse, and under the claim that they were the owners of the land.

On October 27th, 1902, the plaintiff bought the Benger lot of Henry and Otis Benger, who described themselves in the deed as the only persons having any interest in the estate of William H. Benger. The deed was a warranty deed, and bounded the land by Water Street and by land of the Bailey heirs in such manner as to include in the land conveyed the triangular piece of land in dispute. It appears by the record that on July 19th, 1902, the plaintiff and Henry and Otis Benger executed a deed of that date, recorded two days later, whereby the parties agreed and covenanted as follows : The Bengers agreed to sell and convey to the plaintiff the land described in said deed of October 27th, for $2,500, $25 of which was paid before execution, and the balance to be paid as soon as a warranty deed could be prepared and the grantor's title verified and approved by the purchaser. It was further agreed by the parties, that in case the title to the land as described could not be so verified and approved, the purchaser, at his option, should have a reasonable time within which he might attempt to remove and heal any defect in said title, at his own expense. The plaintiff covenanted to purchase and pay for said land upon said terms. The plaintiff acquired the only title he has to the land in dispute by said warranty deed of October 27th. At the time the plaintiff purchased the land and took this deed he knew that the defendants were in possession of the triangular piece of land in dispute, holding title thereto adversely to the Bengers, and three days after he received said deed commenced this action, which is brought under § 4053 of the General Statutes.

*John S. Pullman* and *J. Belden Hurlbutt*, with whom was *Leo Davis*, for the appellant (plaintiff).

*John H. Light*, for the appellees (defendants).

HAMERSLEY, J. It is admitted by the pleadings that the plaintiff is the owner in fee of the piece of land called the Benger tract, as it appears in map 2 of the statement. The plaintiff alleges that he is also owner of the triangular piece of land in dispute, as it appears in the same map, and this allegation is denied by the defendants. It is patent from the pleadings, as well as from the finding of the court, that the plaintiff's action is founded on his alleged ownership in fee of this disputed piece of land, the boundaries of which are clearly defined in the pleadings. The defendants not only deny the plaintiff's allegation of ownership, but allege a title in themselves by adverse possession, and this allegation is denied by the plaintiff. At the time of the conveyance of both these pieces of land the plaintiff's grantors were in possession of the first piece, and, as found by the court, were not in possession of the second piece, which was in possession of the defendants, claiming title thereto adversely to the plaintiff's grantors, and this was known to the plaintiff. The substance of the transaction is not affected by the fact that the deed is carefully drawn so as to include both pieces of land in one description. The defendants claim that the deed, or as much thereof as purports to convey the triangular piece of land in dispute, is clearly void by force of § 4042 of the General Statutes, prohibiting the sale of disputed titles ; but the court founds its judgment not only upon the failure of the plaintiff to show a legal title in himself, but also upon its conclusion of fact that the defendants have established a title in themselves by adverse possession for more than fifteen years ; and unless the court in reaching this conclusion adopted some erroneous principle of law, or has found some material fact necessarily inconsistent with the conclusion reached, the judgment must stand.

The plaintiff urged in argument that the finding suggests some doubt whether the adverse possession found by the court covered the whole of the triangular piece of land in dispute. We do not so read the finding. The title of the

defendants, by adverse possession, to this triangular piece of land, its apex being at the intersection of Ann Street with the public highway called Water Street, bounded on one side by the Benger fence and on the other by this public highway, is distinctly put in issue by the pleadings, and the judgment finds this issue for the defendants ; and in its finding the court states that this piece of land, thus bounded, has since 1884 been continuously in the adverse possession of the defendants and of their predecessors in title. As we are satisfied there is no error in this finding, the errors assigned in the appeal, in respect to the finding of the court that the plaintiff had failed to establish a legal title in himself to this land, become immaterial.

The errors assigned which call for any special notice relate mainly to certain evidential facts which the court, at the request of the plaintiff, has incorporated in the finding, and which the plaintiff claims are legally inconsistent with the fact of continuous adverse possession by the defendants for more than fifteen years, which was found by the court and upon which its judgment rests. Adverse possession is a question of fact, and when found by the trial court will not be reviewed by this court as a conclusion from evidential facts, unless it appears that these facts, or some of them, are, legally or logically necessarily inconsistent with that conclusion. The evidential facts relied on by the plaintiff are not of this character. The fact that the defendants, while occupying the land as a lumber-yard, piled the lumber so high as to be an annoyance to Mrs. Benger, then occupying the Benger house, and at her request piled the lumber so as to avoid that annoyance, is not necessarily inconsistent with the continuous adverse possession. The fact that one of the defendants, while testifying in the trial, was asked upon cross-examination if in occupying the land he had the intention of holding adversely to and so acquiring title against the person to whom the land rightfully belonged, and answered that he did not, but that he occupied claiming that his father's deed gave title to the property, did not determine the question of adverse user, nor conclude the defendants from setting

up title to the land through adverse possession. The fact that the defendants, in using the land of which they had taken possession as a lumber-yard, have not actually used that portion lying north of the small gate mentioned, by depositing lumber thereon, or, so far as appears, in any other way—the space between the road and the Benger fence being too narrow to make such use practicable—and that one of the plaintiff's grantors stored his row boat thereon without objection in the winter for many years since the entry of the defendants, is not necessarily inconsistent with the defendants' adverse possession of the whole piece of land as found by the court. The fact that the small gate was used as a means of ingress and egress to the rear of the Benger house, and other facts relied on by the plaintiff, are evidential and not necessarily conclusive against the actual, continuous, and adverse possession found by the court. Whether or not the plaintiff has a right of way of any kind from his small gate to Water Street, is a question not passed upon by the court nor concluded by the judgment.

It appears that William H. Benger died in 1870, leaving two sons (the plaintiff's grantors), a daughter and a widow; that the daughter died unmarried and without issue in 1889; that the widow died in 1901; that no administration upon Benger's estate was taken out; that one of the sons resided elsewhere, and the widow continued to reside in the Benger house until her death; that the land lying westerly of the Benger fence has been in the possession of William H. Benger and his family continuously from 1856 until deeded to the plaintiff. It does not appear that there was ever any family settlement or distribution of Benger's estate. Section 1109 of the General Statutes, limiting a right of entry to fifteen years, provides " that the limitation herein prescribed shall not begin to run against the right of entry of any owner of a remainder or reversionary interest in real estate, which is in the adverse possession of another, until the expiration of the particular estate preceding such remainder or reversionary estate." The plaintiff claimed that the possession of the defendants could not, under the provisions of the statute,

ripen into a title by adverse possession as against the children of William H. Benger, prior to the death of his widow. Upon the facts above stated, this claim is obviously without merit.

The complaint in this action, which is in substance an action of ejectment brought by an alleged owner out of possession against the person in possession, is framed in pursuance of the provisions of § 4053 of the General Statutes. This section was first enacted in 1893. Public Acts of 1893, p. 237, Chap. 66. The language used is very broad, and may include legal claims proper to be tried to a jury as well as equitable claims proper to be tried by a court of equity. But in proceedings under the Act, such legal claims must be tried and determined under the laws and practice of this State, as in other cases. *Miles* v. *Strong*, 68 Conn. 273, 277, 287. Whether or not a cause of action which is in substance an action of ejectment, and nothing more, is properly stated in a complaint framed to meet the requirements of the special equitable remedy provided by this Act, is a question the parties have not raised in this case. But if such a cause of action can properly be tried under cover of this proceeding, it must, when its real nature is disclosed and defined by the pleadings, be substantially tried and determined as an action of ejectment. The parties are entitled to a jury trial, and the plaintiff, alleging an ownership in fee, must prevail on the strength of his own title and not merely on the weakness of the defendant's title. *Miles* v. *Strong*, 68 Conn. 273; *Cahill* v. *Cahill*, 75 id. 522, 523; 76 id. 542, 546, 548. If, therefore, the plaintiff's action is maintainable under this statute, the Superior Court did not err in ruling that in cases brought " by a person out of possession against a person in possession, there being no other parties of record, if the plaintiff fails to show that he has any title or interest in the property the defendant is entitled to judgment, although he fail to show title in himself."

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.