BETSEY I. LEVENSON & another *vs.* BOSTON ELEVATED
RAILWAY COMPANY.

Suffolk.   January 24, 1906. — March 2, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Damages.   Evidence.   Boston Elevated Railway Company.*

At the trial of a petition for the assessment by a jury of damages to real estate the
presiding judge in his discretion may admit evidence of the rents actually re-
ceived from the property during the four years previous to the act which occa-
sioned the damage as bearing upon the rental value of the real estate which is
one of the things that enters into its market value.

At the trial of a petition for the assessment by a jury of damages to real estate the
presiding judge in his discretion may admit evidence of the cost of a building
standing on the land erected four years before the act which occasioned the
damage, to assist the jury in arriving at the market value of the property at the
date as of which the damages are to be assessed.

At the trial of a petition under St. 1894, c. 548, and St. 1897, c. 500, for damages to
land and buildings of the petitioner by the construction, maintenance and opera-
tion of the elevated railway of the Boston Elevated Railway Company, it appeared
that the construction of the elevated structure in front of the petitioner's prem-
ises began in October, 1899.   The husband of the petitioner testified without objec-
tion that he bought the land for his wife in 1895 for $3,250, and that in the same
year he erected a brick building on the land for his wife.   He was asked to state
the cost of this building.   The respondent objected, and the judge admitted the
question.   He answered $12,300.   The witness also was asked to state the rents
received from the property, beginning in the latter part of 1895.   The respondent
objected on the grounds that the time named was immaterial and that actual
rents were not competent to show rental values.   The judge admitted the ques-
tion as throwing light on the rental value, and the witness gave the rents in detail.
*Held,* that the admission of the evidence in both instances was within the discre-
tion of the presiding judge and that there was nothing to show that his discretion
was exercised improperly.

PETITION, filed January 29, 1902, under St. 1894, c. 548, and
St. 1897, c. 500, for the assessment of damages alleged to have
been caused to the land and buildings owned by the petitioner
Betsey I. Levenson by reason of the location, construction,
maintenance and operation of the elevated railway of the
defendant.

At the trial in the Superior Court before *Bishop,* J. the fol-
lowing facts appeared:

The real estate in question comprised a five story brick build-
ing at the corner of Commercial Street and Commercial Court

in Boston, numbered 484 and 486 on that street, also a three story brick building and a three story wooden building on Commercial Court. The land on which the three buildings stood, although acquired by Mrs. Levenson under different conveyances, formed one continuous lot.

The elevated railway is located and in operation on Commercial Street in front of the premises of the petitioner. The work of constructing the railway in front of the premises began when the surface of the street was broken for the purpose of building foundations for the posts on October 18, 1899, although surveys had been made before 1897. The elevated structure was completed at this point on May 11, 1901, and the first train was run on June 14, 1901.

The petitioner Betsey I. Levenson bought the land in 1895 and in that year erected the five story brick building facing on Commercial Street. She erected the three story brick building on Commercial Court in 1899, in place of an old wooden building which formerly had stood there. The wooden building on the court, now standing, had been there many years before 1895.

The entire premises were leased to one Martinetti on June 1, 1897, for five years at an annual rental of $1,680. This lease was cancelled and a new lease was given on June 1, 1899, for five years at an annual rental of $1,980. The occasion for this change in leasing was the erection of the three story brick block on Commercial Court in 1899.

Both the petitioners and the respondent offered expert evidence as to the effect upon the market value and the rental value of the property in question of the location, construction, maintenance and operation of the elevated railway.

Louis H. Levenson, the husband of the petitioner Betsey I. Levenson, was called as a witness for the petitioners, and testified that he bought the land for his wife and had charge of the construction of the building on Commercial Street in 1895, and paid the bills, and knew what it cost as well as what the land cost; that he managed the property and had the renting of the premises down to the time of the lease to Martinetti on June 1, 1897, and that he was familiar with the value of real estate in that vicinity.

This witness having stated the cost of the front lot of land in 1895 to be $3,250, without any exception on the part of the respondent, was asked to state the cost of the brick building erected in 1895.   The respondent objected to the question without specifying or being asked to specify any reason for the objection, but the judge allowed the witness to answer it.   The witness gave the cost as $12,300, and the respondent excepted.

This witness also was asked to state the rents received from the property beginning in the latter part of 1895.   The respondent objected to the question on the grounds that the time named was immaterial and that actual rentals were not competent to show rental values.   The judge admitted the question as throwing light on the rental value, and the witness gave the rents in detail.   The respondent excepted.

The respondent's witnesses testified that the damages did not exceed $1,200; the petitioner's witnesses testified that the damages were about $10,000.   The jury found for the petitioners in the sum of $3,875; and the respondent alleged exceptions.

*G. L. Mayberry & J. M. Gibbs*, for the respondent.

*J. E. Young & F. J. Daggett*, for the petitioners.

MORTON, J.   These exceptions relate to two matters of evidence.   The husband of the petitioner Levenson was called as a witness for her, and, subject to the respondent's exceptions, was allowed to testify to the cost of the brick building erected in 1895, and to the rents received from the property, beginning in the latter part of 1895.   The judge allowed the rents to be introduced as bearing upon the rental value, — rental value being one of the things that enter into market value.   *Lincoln v. Commonwealth,* 164 Mass. 368, 380.   There is nothing to show that the rents were not paid in the ordinary course of business under normal conditions and in good faith, or that they had been or were inflated for the purposes of the trial, or were higher than rents generally in that neighborhood.   These things, as well as how far back the petitioner should be allowed to go, were all matters for the presiding judge to pass upon, and if taking all of the circumstances into account he was of opinion that the rents actually paid would or might assist the jury in arriving at the rental value, we think that, in the exercise of his discretion, he properly could admit them.   We see nothing to show that

his discretion was not exercised properly. And so with regard to the cost of the building. There is nothing to show that the sum paid was not paid in good faith and under normal conditions and it cannot be said, we think, as matter of law that the cost could not have assisted the jury in arriving at the market value of the petitioner's estate as of the date when the damages were to be assessed. We see nothing to show that the presiding judge was wrong in admitting it, or that his discretion was not exercised rightly.

*Exceptions overruled.*