MICHAEL F. CAMPBELL *vs.* THE CITY OF·NEW HAVEN.

Third Judicial District, New Haven, April Term, 1924.

WHEELER, C. J., BEACH, CURTIS, KEELER and HAINES, Js.

The rule that private property may not be taken for public purposes
without just compensation applies to all kinds of property and
every kind of right or interest in property which has a market
value.

If one erects improvements upon land which he occupies under actual
or apparent authority and which is thereafter condemned for
public purposes, he and not the owner of the land is entitled to
compensation for the value of the improvements; it is otherwise
in the case of a mere trespasser since improvements erected by
him belong to the owner.

In the present case, the plaintiff claimed that the present value of his
land which was being condemned for park purposes was enhanced
by the probability that he would in the future acquire title by ad-
verse possession to an adjoining tract by reason of the facts that
he had, for a period of ten years, directed and supervised the
dumping of refuse thereon by the public and had, since the com-
mencement of the condemnation proceedings, enclosed it from
the highway by a fence. *Held:—*

1. That the erection of the fence after the commencement of the pro-
ceedings could not be considered with reference to the claim of
adverse possession.

2. That the mere supervision and direction of the public dumping
could not by themselves constitute a title by adverse possession
though continued for the full statutory period.

3. That until the plaintiff had established title by adverse possession
to the adjoining tract, the question whether the value of his own
land was increased by the probability that his possession would
ripen into future title was too speculative, uncertain, and remote
to constitute an element of just compensation.

4. That the standard of value of property taken on condemnation is
its value for the purpose to which it is then being applied, or its
value for purposes to which it could, under then existing circum-
stances, be most advantageously applied; therefore, in the present
case, a map was properly admitted in evidence for the purpose
of showing that from an engineering point of view it was practicable
to locate certain structures upon the plaintiff's land.

5. That if property taken on condemnation has a market value, that
is the measure of compensation, but the owner is not restricted

to expert evidence as to market value; he may offer direct evidence as to all those elements of his damage which, under the circumstances of the particular case, are relevant and material to the conclusion expressed by the expert, such as location, environment, uses, adaptability, sales of similarly situated properties, separate cost of land and buildings, or replacement value of buildings less depreciation.

6. That when evidence is offered as to a sale of land similarly located and of like character to the land in question,—the most reliable test of market value—our rule permits examination as to all details concerning the use, adaptation and selling price of such land and it was, therefore, error in the present case for the trial court to exclude defendant's offer to show that the selling price of certain neighboring land, though expressed as a lump sum, was really computed by dividing the tract into three sections and placing separate values upon each section.

Argued April 10th—decided July 11th, 1924.

APPLICATION in the nature of an appeal from an assessment of damages amounting to $13,095 for the condemnation of two parcels of the plaintiff's land taken for park purposes, brought to and tried by the Superior Court in New Haven County, *Banks, J.;* facts found and judgment rendered for the plaintiff for $21,335, and appeal by the defendant. *Error and new trial ordered.*

This action was in the nature of an appeal from the action of the authorities of defendant city taking by condemnation proceedings under its charter, lands of the plaintiff for park purposes. The parties were at issue in the Superior Court solely upon the question of just compensation for the land taken, viz., parcel marked 2 upon exhibit A attached to the finding and bounded and described as follows: Southerly on Congress Avenue, Westerly on West River, Northerly on Pardee, Easterly on land of Addington E. Newhall and Boulevard, Southerly on land of Joseph Krajewski, Easterly on land of Joseph Krajewski, Southerly on land of Henry W. Breunig, and Easterly on land of Henry

W. Breunig to place of beginning on Congress Avenue; and parcel marked 93, upon such exhibit A, and bounded and described as follows: Southerly on Congress Avenue, Westerly on Henry W. Breunig, Northerly on Joseph Krajewski and Easterly on Boulevard.

Parcel 2 is bounded in part on the east by a parcel of land belonging to the estate of Addington E. Newhall at the commencement of the condemnation proceedings and has a frontage on the Boulevard of about one hundred and eighty feet and a depth varying from one to twenty feet, and lies between a portion of parcel 2 and the Boulevard. We shall designate this here-after as parcel 3. Parcel 2 was originally all meadow land. It had been filled along the whole of Congress Avenue to practically the street level for a distance of about two hundred feet from the Avenue and along the whole of the Boulevard frontage to approximately the same depth and to some extent beyond this. The filling had resulted from the use of the land for free public dumpage. The plaintiff appellee has worked over the filling dumped on parcel 2 since the year 1911 at a considerable expenditure of money, and after the commencement of these proceedings, he built a fence along the street line of the Boulevard and in front of his own land and that of Joseph Krajewski and claims to have been in adverse possession of parcel 2 since 1913, basing his claim upon his acts in directing and supervising public dumping upon the Newhall land as well as upon parcel 2, and upon the erection of a fence along the Boulevard in front of parcel 2 and in front of the Newhall tract. At the time of the commencement of the condemnation proceedings and of the bringing of this action, the appellee had not been in adverse posssession of the Newhall parcel for fifteen years, nor did he have any record title to this parcel. No evidence was offered of any assertion of title adverse

to the plaintiff's claim of title, nor of any possession adverse to plaintiff's claim of title, nor as to his title to the land west of the Boulevard.

In reassessing the damages for the taking by the defendant of parcel 2, the court took into consideration the situation, possession and title of the land designated as parcel 3, upon the theory that parcel 2 was increased in value by reason of the probability that plaintiff would thereafter acquire title to it by adverse possession.

*George W. Crawford,* with whom was *Thomas R. Robinson,* for the appellant (defendant).

*George E. Beers* and *Harry Bernblum,* for the appellee (plaintiff).

WHEELER, C. J. The defendant city duly proceeded under its charter authority to take by condemnation parcels 2 and 93 as numbered upon the map, exhibit A, made a part of the finding. The plaintiff appealed from the award of the Bureau of Compensation of the defendant city to the Superior Court, and that court rendered its judgment increasing these awards, and the defendant took its appeal to this court for the errors of the trial court in adopting an improper standard in its assessment of just compensation and in making certain rulings on evidence. Errors assigned as to the improper standard adopted concern parcel 2, while the errors as to rulings on evidence concern parcel 93. Parcel 2 is bounded upon the east by the street named Boulevard about seventy feet and by land of the Newhall estate about one hundred and eighty feet. The land of the Newhall estate is a triangular strip running to a point in the Boulevard where it meets the line of the plaintiff's land and being at its northern boundary

about twenty feet wide.  The plaintiff has no title to this triangular strip, either by record or by adverse possession.  The city has not taken nor claimed to have taken any interest or estate which the plaintiff may have in the Newhall parcel.  Nor has the trial court assessed any part of the just compensation awarded the plaintiff for the taking of any interest or estate in the Newhall estate.  The use the court made of parcel 3 in assessing just compensation for the taking of parcel 2 was this.  The court was of the opinion that a substantial amount should be added to the market price of parcel 2 because of the probability that the plaintiff would in a short time acquire the title to parcel 2 by adverse possession, thus giving to parcel 3 frontage upon the Boulevard along its entire east side.  The acts upon which plaintiff bases his claim to have been in adverse possession of parcel 3 since 1913 are confined to the direction and supervision of the public dumping upon parcel 3 from 1913 on and the erection of a fence along the east boundary of parcel 3, namely, the Boulevard.  The building of the fence after the proceeding in condemnation had begun could not be considered in establishing a title by adverse possession in plaintiff.  The mere finding that plaintiff had directed and supervised the public dumping upon parcel 3 would fall far short of establishing a title by adverse possession even though these acts had continued for the statutory fifteen years. They do not present the essential elements from which the trial court could find a title by adverse possession as a fact.  *Stevens* v. *Smoker*, 84 Conn. 569, 574, 80 Atl. 788.  And if so found, we should be compelled to hold that this conclusion was erroneous because not legally or logically consistent with the subordinate facts.  *Layton* v. *Bailey*, 77 Conn. 22, 28, 58 Atl. 355. But let us assume, as the court does, that the sub-

ordinate facts found for the period covered would suffice to constitute the essential elements of adverse possession for this period.

In support of his main contention, plaintiff urges that by virtue of his acts of adverse possession, he had acquired an interest in parcel 3. It must be conceded that all kinds of property, and every kind of right or interest in property which has a market value cannot be taken *in invitum*, without making just compensation therefor. And where one enters into occupancy of land under actual or apparent authority and places improvements upon the land which is thereafter taken in condemnation proceedings, he and not the owner is entitled to be compensated for the value of such improvements. Thus, where a municipality, upon competent advice that a squatter title was valid, purchased the land and erected a schoolhouse thereon, and, being ejected, brought condemnation proceedings, it was held that the municipality was entitled to the value of these improvements and not the owner. See also *Wendel* v. *Spokane County*, 27 Wash. 121; note to Ann. Cas. 1912A, p. 245; and *Perry* v. *Clissold*, App. Cas. [1907] 73, was a case of this kind. The possessor was not a mere trespasser. *Andrew* v. *Nantasket Beach R. Co.*, 152 Mass. 506, 25 N. E. 966.

In the case of a mere trespasser upon land, the improvements he makes belong to the owner and on condemnation the trespasser cannot obtain compensation for their value. In *Cohen* v. *St. Louis, F. S. & W. R. Co.*, 34 Kan. 158, 165, 8 Pac. 138, the court said: "Of course it must be admitted that where a mere wrongdoer, a naked trespasser, enters upon the land of another, and makes improvements thereon of a permanent character, such improvements become the property of the landowner; and this will apply to railroad companies as well as to others." See also Nichols

on Eminent Domain (2d Ed.) Vol. 1, § 120, and cases cited. Upon the facts found, the plaintiff in the acts done on parcel 3 was a mere trespasser; he had no actual or apparent authority for what he did. So that even though the facts found showed that the plaintiff had had adverse possession of parcel 3 for the period he claims and defendant had condemned parcel 3, the plaintiff, a mere trespasser upon this land, could not have obtained compensation for the improvements, if any, which he had made on the land during the time of his occupancy. The question raised by the appeal is more remote than that of the trespasser seeking compensation in condemnation proceedings for the improvements he had made. It is whether the trespasser's improvements on land occupied by him adversely enhance the value of his adjoining land because of the probability that his continued trespass will be undisturbed until his occupancy by adverse possession shall ripen into an indefeasible title. If increased compensation is given for the taking of parcel 2, upon the theory that the plaintiff will some day own the adjoining land—parcel 3—which he now holds in adverse occupancy, and later the true owner disposses this trespasser and the defendant subsequently bring condemnation proceedings to take parcel 3, it must make the true owner just compensation for the land so taken. The result will be that the municipality will have paid more than just compensation to the plaintiff. Until the plaintiff acquires title to parcel 3, he cannot claim that parcel 2 is increased in value by parcel 3. The defendant is quite right in its contention that the question whether a purchaser of parcel 2 would pay the plaintiff more for this parcel because of the probability that plaintiff's possession of parcel 3 would ripen into a title by adverse possession, is "too speculative and too uncertain and remote a probability" to be con-

sidered by a court in assessing just compensation for the taking of parcel 2.

Three rulings on evidence remain for review.  1.  The plaintiff offered a map of parcel 93 to show that from an engineering point of view it was practicable to locate the structures depicted upon the map upon this parcel.  The map was thereupon marked, over defendant's objection, exhibit 3 for identification.  Subsequently, plaintiff offered to prove that he contemplated the use of parcel 93 by building thereon the structures depicted upon exhibit 3 for identification and in that connection offered this exhibit in evidence. Upon objection by defendant the court ruled that the plaintiff could not testify as to the plans he had made for the development of this parcel as affecting its market value, but that he was entitled to testify as to its adaptability for development in a certain way and in the way indicated by these plans, and that the plan might be admitted for the limited purpose of showing that the parcel was adapted for development along the lines indicated on the plan.  Counsel for the defendant excepted to this ruling.  Defendant's counsel argue the ruling as though permitting the plaintiff to show the particular uses of the property which he intended to make at some future time.  The trial court expressly limited the scope of this evidence and excluded it for the very purpose for which defendant claims the evidence was received, and consequently we do not consider the ruling from this standpoint.  As made, the ruling was correct and finds ample support in our own descisions.  In *New York, N. H. & H. R. Co.* v. *New Haven*, 81 Conn. 581, 585, 71 Atl. 780, the court, by BALDWIN, C. J., says: "It is true that the company may never build the retaining wall, and may, to-morrow, abandon the further use of the side tracks for the support of which that wall would be necessary.  But

possibilities of such a nature cannot be contemplated by those charged with the duty of assessing damages for property taken under the right of eminent domain. They must estimate them by the standard of its value for the purposes to which it is being applied, or of its value for the purposes to which it could, under the existing circumstances, be most advantageously applied, if this be a greater sum." See also *Milford Water Co.* v. *Kannia,* 92 Conn. 31, 34, 101 Atl. 475; *Smith* v. *Commonwealth,* 210 Mass. 259, 261, 96 N. E. 666; 2 Nichols on Eminent Domain (2d Ed.) § 447; 3 Sedgwick on Damages (9th Ed.) § 1164.

2. There is upon parcel 93 a one-story frame building with an ell used as a store and a garage and well adapted to the uses to which it is now devoted. The court permitted two witnesses to testify to the replacement value of this building "not as a measure of damages, because the measure of damages is the value of the owner's land as enhanced by the value of the buildings, but it seems to me, as one of the elements in that value, or at least one of the ways of getting at it, is to find out how much it [the building] would cost."

When the land and buildings taken have a market value, that must serve as the measure of damages; if there be no market value, "its value . . . must be ascertained in some other rational way . . . from such elements as are attainable." *Southern Express Co.* v. *Owens,* 146 Ala. 412, 426, 41 So. 752. Where there is a market value the elements which go to make up or affect that value are admissible by direct evidence, or may be elicited in cross-examination. Sedgwick on Damages (9th Ed.) Vol. 3, § 1163, says: "Hence it has become the practice to take evidence not only directly as to the market value, but as to every element which enters into value, and tends to diminish it." And he cites in support of this our own cases. *Platt* v. *Milford,*

66 Conn. 320, 34 Atl. 82; *Holley* v. *Torrington,* 63 Conn. 426, 28 Atl. 613; and *Shelton Co.* v. *Birmingham,* 62 Conn. 456, 26 Atl. 348. The trial court admitted evidence of one of the elements of damage for the purpose of enabling the court to apply the rule, as stated in Sedgwick, *supra,* in § 1163. In an assessment of damages caused by the location of a railway it is said: "There is nothing to show that the sum paid was not paid in good faith and under normal conditions and it cannot be said, we think, as matter of law that the cost could not have assisted the jury in arriving at the market value of the petitioner's estate as of the date when the damages were to be assessed." *Levenson* v. *Boston Elevated Ry. Co.,* 191 Mass. 75, 78, 77 N. E. 635. The authorities upon this point are at variance. Thus, Lewis on Eminent Domain (3d Ed.) Vol. 2, § 664, says: "Where property is improved with buildings or other structures the general rule is that the evidence must be confined to the value of the property as a whole and that evidence of the cost of the improvements, or of their structural value or of the cost of reproducing them is not competent," and cites to this, *Mifflin Bridge Co.* v. *Juniata County,* 144 Pa. St. 365, 22 Atl. 896, and *Devou* v. *Cincinnati,* 162 Fed. 633. See also 22 Corpus Juris, p. 187, § 148.

The leading modern case in opposition to the doctrine of earlier New York cases and of Lewis, is *Matter of City of New York,* 198 N. Y. 84, 85, 87, 91 N. E. 278. "A single question," says the court, "is presented by this appeal, and that is whether an owner whose lands are taken *in invitum* may give evidence as to the structural value of buildings thereon, for the purpose of establishing his total damages. . . . In the greater number of cases, however, when the character of the structures is well adapted to the kind of land upon which they are erected, the value of the buildings does

enhance the value of the land. In such cases it is true that the value of the land as enhanced by the value of the structures is the total value which must be the measure of the owner's just compensation when his property is condemned for public use. . . . But how is the enhancement of the land by the structures which it bears to be proven? . . . Buildings . . . differ . . . and we can think of no way in which they can be legally proved except by resort to testimony of structural value, which is but another name for cost of reproduction, after making proper deductions for wear and tear." See 35 Harvard Law Review, 76. Parcel 93 does not appear to have been incapable of having a market value and we assume that it had such value although the finding leaves this to inference. How shall that market value as testified to by the expert be determined? Is the court to determine this by the opinion of the expert alone? Ordinary practice subjects this opinion to rigid cross-examination touching the location, environment, uses, adaptability, sales of similarly situated properties, separate cost of land and building, and cost of reproduction less depreciation for wear and tear. These and all the other elements material to the opinion so expressed are proper subjects of cross-examination. If these elements can be brought out indirectly through cross-examination, because relevant and material, there is no good reason why they should not be equally relevant and material if presented on the direct examination. We see no escape from the logic of the opinion of the Court of Appeals of New York. In *United States* v. *Boston, C. C. & N. Y. Canal Co.*, 271 Fed. 877, 888, the Circuit Court of Appeals says: "It is in substance conceded that reproduction cost is competent evidence of market value, provided the prices existing at the time of reproduction are normal, making due allowance for the pe-

riod of time necessary to reconstruct the property."
The Circuit Court held that the prices in the case be-
fore it were not normal, but inflated through conditions
arising from the war, and formulated a special rule ap-
plicable to such a situation. That is not the case be-
fore us. The proposition we are considering was con-
ceded in that case, and, that too, by most eminent
lawyers of the Boston bar. Every element which en-
ters into the market value of property should be ad-
missible in evidence when relevant and material, and
at times structural or reproduction or replacement
value may be both relevant and material. In the case
before us, we could not hold upon the facts found that
this evidence may not have been both relevant and
material, provided allowance were made for deprecia-
tion. Whether this was done the finding does not dis-
close. Nor can we tell from the facts found whether the
admission of the evidence was harmful or not. The
divergence of opinion upon the admissibility of re-
placement value of a building taken in condemnation
proceedings may have arisen from the failure to dis-
tinguish between the measure of damage and the ele-
ments of damage. This distinction the trial court
made and we are of the opinion that the evidence was
admissible for the purpose for which it was received.

3. The last ruling on evidence made the subject of
appeal and pressed in argument before us arose out of
the offer by the defendant to show that the sale of
property on the corner of Boulevard and Congress Ave-
nue opposite parcel 93 containing two and sixty-five
one hundredths acres, for the price of $7,800, was in
fact sold by the front foot, making up this valuation
based on the two street frontages and on the rear land
having no street frontage. The offer was made for the
purpose of showing that there were three bargains in the
one price, one for the frontage on Congress Avenue, one

for the frontage on the Boulevard, and one for the land in the rear of this tract having no frontage.

The court excluded this offer upon the ground that the details of the bargain could not be gone into any further than to show what the property was sold for and how much it brought. If the total sale price of this property was as far as the evidence could be permitted to go, it would be of little or no importance in furnishing a comparison with parcel 93. But if the front foot valuations used in reaching the price for the whole were before the court, the comparison in valuation of these two corners would be available, and since this sale was made only six weeks before the condemnation proceedings by defendant were adopted, its materiality would be beyond question. Sales of land similarly located and of like character to the land in question are the most reliable tests of its market value. The bargain made was threefold and the offer attempted to present the entire bargain so far as it related to the price. The evidence should have been received. In related matters our rule has been the more liberal one, permitting the details of the use, adaptation and price of land similarly situated and of like character, in reaching the ultimate question of market value. The cases cited to the preceding point show this.

There is error and a new trial is ordered.

In this opinion the other judges concurred.