[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By way of condemnation the Connecticut Commissioner of Transportation has acquired property owned by the City of Hartford. As a result damages were assessed in favor of the City in the amount of $482,000.00, which sum is now held by the Clerk of this court. The claimant, Statewide Parking Services, Inc., claims a portion of that sum under the provisions of General Statutes 48-21.
Its claim is based on an agreement entitled "License Agreement" with the City of Hartford for the purpose of operating a parking lot on property owned by the City, which property was condemned. The agreement called for an "annual rental" of $61,000.00 and covered a term of one year, from October 15, 1991 to October 14, 1992. The Agreement provides for renewals of two additional one-year periods "on mutual consent, provided further that notice of such intent to renew shall be exchanged, etc."
Because of the condemnation Statewide was obliged to vacate the premises on February 24, 1992, and accordingly claims loss of income from that date through October 14, 1992. It claims loss of income for CT Page 6930 that period of $121,282.00. It also claims loss of income under the option to renew of an additional $126,378.00 for a total of $247,660.00.
I — Liability
The defendant City takes the position that the claimant has a mere license, and not a lease, to use the property acquired by the State. It cites the following:
"A license is generally revocable at will, so that the owner thereof has no remedy for an invasion of his rights. Consequently, a mere license is not generally considered compensable in eminent domain," 2 Nichols the The Law of Eminent Domain (3rd Ed.) Sec. 5.23.
A fair reading of the so-called "License Agreement" leads to the conclusion that it is in reality a lease. Certainly it contains language which is more commonly associated with the creation of a leasehold interest. These provisions are set forth in the claimant's brief. Also, and perhaps most important, the City nowhere in the agreement retains any right to possession. Statewide alone is left in possession and is required to take care of the premises. According to the reported cases the essential element of a lease, as distinguished from a license, is that it grants exclusive possession or control of the premises. Barnett vs. Lincoln (Wash)299 P.2d 392, 394. See also cases cited in "Words and Phrases" Permanent Edition. Sec. 24 A.
A rule of Construction is provided by the following from 51 C.J.S. Landlord and Tenant Sec. 202 (6) pp. 524-526;
 "Whether a particular agreement is a lease or a license depends on whether or not it shows the intention to establish the relation of landlord and tenant, such intention being determined from a consideration of the entire instrument, and the circumstances under which it was made. If the contract confers exclusive possession of the premises or a portion thereof as against the whole world, including the owner, it is a lease, while if it merely confers a privilege to use or occupy under the owner it is a license. It has CT Page 6931 otherwise been stated that a lease differs from a license in that a lease of land conveys an interest in the land, requires a writing to comply with the statute of frauds, and transfers possession, while a license merely excuses acts done by one on land in the possession of another that without a license would be trespasses, and conveys no interest in land. Definiteness of the space to be occupied is one of the criteria for determining whether the instrument is a lease."
It is noted further that in the cases reported in 2 Nichols Sec. 5.23 supra, cited by the City recovery was denied to the claimant because there was a right in the condemning party to revoke the agreement at will. For example, Potomac Electric Power Co. v. Highway Commissioner 180 S.E.2d 657. In the Agreement now in question there is no such right to revoke.
Whether or not the agreement here is a lease, there is no question that it is a valuable property right, regardless of what it may be called. Every kind of right or intent in property which has a market value must be compensated for in condemnation proceedings. Canterbury Realty Co. vs. Ives 153 Conn. 377, 384; Campbell vs. New Haven 101 Conn. 173, 178.
Statewide also claims damages for loss of future years under the renewal provision in the Agreement. This claim is denied. First, because it can be renewed only by "mutual" consent. Second, a sizeable portion of the income is derived from a parking agreement with the Travelers Insurance Company. That agreement accords to Travelers the "option" to renew the parking agreement; it is not binding upon it. Unlike the situation in Canterbury Realty, Inc., supra, the right to renew is not absolute.
Because of these two contract provisions it is felt that to award damages for renewal years would be speculative and improper. See Campbell v. New Haven101 Conn. 173, 178.
The defendant claims that the claimant violated the "License Agreement" because it "sublet" a portion of the premises to the Travelers Insurance Company in violation of Section 19 thereof. The agreement with the Travelers Insurance Company merely provides for CT Page 6932 the renting of a certain number of parking spaces along with other members of the public who pay to park their cars there. There is no creation thereby of the relation of landlord or tenant or of a sub-lease. See cases cited in "Words and Phrases" Permanent Edition, Vol. 40 pp. 764, 765.
The City claims that Statewide was in violation of Paragraph 4 of the "License Agreement," which prescribes the parking charges that Statewide could make. It claims that the charges actually made were not in compliance. However, the evidence reveals that the variance involved was minor in degree and not enough to require a finding that its terms were not complied with.
II — Damages
The value of the lease is properly arrived at by subtracting the rent provided for under the lease from the fair market value of the lease. Canterbury Realty Co. supra p. 382.
The defendant's appraiser has determined the income of the parking lot in large measure on the assumption that there would be strict adherence to zoning requirements as to the number of parking spaces allowable. However, it is uncontroverted that for the period prior to the cut-off date (February 24, 1992), the City made no claim of such violations. In view of this, it is difficult to conclude that Statewide would be unable to park cars in the remaining seven months to the same degree as it did in the months prior to the cut-off date. Parenthetically, there was no direct evidence of zoning violations. Moreover, even if there were violations, it is apparent that they were tolerated by the City. The defendant's appraiser estimates that the net income would have been only $54,360.00 for the unexpired portion of the agreement — that is, for the 7.5 months following February 24, 1992. This figure appears unrealistic. It would seem more accurate, in predicting the income for the 7.5 months, to resort to the income actually produced in the months preceding.
The appraiser also factors in a "risk" figure. However, considering the favorable conditions — the excellent location of the yard, the Travelers contract, and the relationship with the City, it is felt that the risk involved is of lesser consequence, and that the CT Page 6933 agreement would in all probability continue as it had in the past. On this basis it is concluded that 10%, rather than 20%, is proper as a risk factor.
With regard to the defenses interposed by the City, it may be said that, although I have overruled them, the elements they involve may affect a potential buyer in arriving at a purchase price. For example, this could be a factor in assessing the zoning question.
The damages are assessed as follows:
 Net income for the period of February 24 to October 14, 1992 $121,282.00
Less 10% "risk factor" 12,128.00
Fair Market Value $109,154.00
Less Rental for said period 38,935.00
Value of the lease $ 70,219.00
No costs are taxed in favor of either party.
The parties have stipulated that the City has refunded to Statewide the sum of $38,935.00, said amount being the rental for the period from February 24, 1992 to October 14, 1992.
In accordance with General Statutes 48-21, the Clerk of this Court is ordered to pay to Statewide Parking Services Inc. from the amount on deposit the said sum of $70,219.00.
John M. Alexander State Trial Referee